IN THE MATTER OF THE ESTATE OF MANUEL BRANCO, DECEASED.

No. 1498.

APPEALS FROM CIRCUIT JUDGE FOURTH CIRCUIT.
HON. H. L. ROSS, JUDGE.

SUBMITTED SEPTEMBER 13, 1923.        DECIDED DECEMBER 21, 1923.

PETERS, C. J., PERRY AND LINDSAY, JJ.

EXECUTORS AND ADMINISTRATORS—*debts due from executor—liability of surety.*

Where pursuant to his nomination in a will a debtor of the testator is appointed executor of his decedent's will, the liability of the surety on the executor's bond is the same whether the debt be treated as realized assets in the hands of the executor in accordance with the common law rule or treated the same as debts due from other sources.

Opinion of the Court.

SAME—*collection of assets.*

> An executor is bound to exercise that diligence in the collection of debts due the estate of his decedent as an ordinarily prudent man would exercise in his own business affairs.

SAME—*collection of debts due from executor.*

> Where pursuant to his nomination in a will, a debtor of the testator is appointed executor it is his duty to pay his debt to the estate to the extent of his ability to pay when the same is or becomes due.

SAME—*same—failure to collect—liability of surety.*

> Where pursuant to his nomination in a will a debtor of the testator is appointed executor of the will of his decedent, the surety is liable upon the executor's bond to the extent of his principal's ability and failure to pay such indebtedness. Where, however, part of the executor's debt to the decedent is not due, and prior to its maturity a receiver is appointed of the executor's property, the surety is not liable for the failure of his prncipal to pay such debt prior to maturity.

OPINION OF THE COURT BY PETERS, C. J.
(Perry, J., dissenting.)

Manuel Branco, late of Laupahoehoe, Hawaii County, died on June 28, 1921, leaving a last will and testament dated March 29 of the same year, in which he nominated the Security Trust Company, Limited, of Hilo, who was then his debtor to the extent of $82,000, executor. The will was admitted to probate in the circuit court of the fourth judicial circuit on August 29, 1921, the Security Trust Company being appointed executor thereof. Letters testamentary were issued to the executor September 1, 1921, upon its filing an approved bond with the United States Fidelity & Guaranty Company as surety, conditional upon the full performance by the executor of the duties of its office according to law. This indebtedness consisted of four interest-bearing promissory notes, sometimes referred to as "gold notes,"—three in the sum of $25,000 each payable to the testator on demand, and one in the sum of $7000, dated March 3, 1921, payable to the testator

one year after date, interest payable quarterly. Notice
to creditors was given according to law, the first publica-
tion thereof being August 27, 1921. Under the statute of
nonclaims the time for presentation of claims against the
estate expired February 27, 1922. No trusts were cre-
ated by the will and unless delayed by debts not yet
matured it would have been the duty of the executor to
take the necessary steps to close the estate and make dis-
tribution within a reasonable time after February 27,
1922. On September 26, 1921, the executor filed an
inventory of the assets of the decedent wherein it
included in the schedule of personal property its notes to
the testator at their face value together with the interest
respectively accrued on each. The inventory was verified
by one H. A. Truslow as vice-president of the Security
Trust Company, Limited, the affiant affirming that "the
valuation of each item as placed therein is the true value
as I verily believe." This inventory was subsequently
amended in other particulars. On February 21, 1922, a
week short of a day prior to the expiration of the six
months limitation fixed by the statute of nonclaims, but
before its note of March 3, 1921, became due, a receiver
was duly appointed of the property of the Security Trust
Company, Limited, on the ground of impairment of capi-
tal within the meaning of section 3371, R. L. 1915. On
April 19, 1922, pursuant to and in compliance with the
order of the probate court directed thereto, the executor
filed its first and final account. On April 28 following it
also filed an inventory of all assets in its hands wherein
were included as unpaid the notes evidencing its indebted-
ness to the estate. On June 16, 1922, the widow of the
testator filed a petition praying the removal of the Secur-
ity Trust Company, Limited, as executor and for the
appointment of administrators de bonis non, resulting on
June 30, 1922, in the removal of the Security Trust Com-

pany, Limited, as executor and the appointment of the Henry Waterhouse Trust Company, Limited, and George H. Vicars, administrators *de bonis non,* the former of whom, however, subsequently, but prior to decree, resigned. On December 22, 1922, a supplemental petition for the hearing and approval of the final accounts of the executor and for a citation to each of the heirs, to the administrator *de bonis non,* and later, by amendment, to the United States Fidelity & Guaranty Company, was filed. On March 15, 1923, the widow filed amended exceptions to the executor's final account, praying *inter alia* that the executor be surcharged with the three demand gold notes of the Security Trust Company, Limited, in the sum of $25,000 each, and with one gold note due March 3, 1922, for $7000, and accrued interest. To these exceptions the executor filed its written reply wherein it admitted its indebtedness upon said gold notes in the sum of $82,000 and accrued interest but alleged insolvency and an inability to pay by the executor at the time of its appointment as such and ever since its appointment.

The court filed a decision in said cause on June 14, 1923, holding among other things that the Security Trust Company, Limited, at the time of its appointment and since was solvent and able to pay its indebtedness to the estate; that such indebtedness under those circumstances became realized assets in the hands of the executor, and ordered that the executor forthwith pay and turn over to the administrator *de bonis non* all money found to be in its hands, in default of which the United States Fidelity & Guaranty Company, as surety on the executor's bond, was liable.

A decree in accordance therewith was entered on the 7th day of July, 1923. From this decree the executor and the surety have taken appeals as has also the adminis-

trator *de bonis non*.  The executor failed to prosecute its appeal.

Most of the facts of the case as hereinbefore recited are culled from the decision of the lower court.  The testator's will, the inventories, the executor's first and final account and the executor's bond were omitted from the record sent here.  This court of its own motion secured from the clerk of the fourth circuit court certified copies of the will and affidavit of publication of notice to creditors and executor's bond and the original inventory and they have been made a part of the record.

The only error assigned by the surety is to that portion of the decree which holds the surety liable for the full amount of its principal's indebtedness to the estate.

The indebtedness of the Security Trust Company, Limited, to the estate of Manuel Branco, deceased, being admitted the only question for our determination is the liability of the surety on the executor's bond.

The surety contends that at the time of the appointment of the Security Trust Company as executor and since and up to the time of its removal as such it was insolvent and that the surety is liable upon the executor's bond only to the amount of such debt actually collected by the executor.

The administrator on the other hand contends that in the absence of statute and under the provisions of section 1, R. L. 1915, the common law rule prevails; that at common law where a testator appointed his debtor executor of his will, the debt upon the acceptance by the debtor of the trust was considered as realized assets in the hands of the executor for the failure to account for which his surety was liable as upon a devastavit; that this rule applies irrespective of whether the executor was solvent or insolvent at the time of his appointment; and that even assuming that the common law rule does not apply

to the extent of making the surety's liability greater than its principal's ability to pay its debt, the Security Trust Company at the time of its appointment and since was solvent and able to pay its indebtedness to the estate of Manuel Branco, deceased, for the failure of which so to do the surety is liable.

It is true that by Section 1, R. L. 1915, the common law of England, as ascertained by English and American decisions, is declared to be the common law of the Territory of Hawaii in all cases except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the Territory of Hawaii, or fixed by Hawaiian judicial precedent. We know of no local statute on the subject. We are not prepared to say that Hawaiian judicial precedent does or does not fix a different rule. Neither counsel in their briefs have pointed out any statute or judicial precedent establishing a different rule from that which obtained at common law. But whether or not the common law of England in respect to debts owing by an executor to his testator has been adopted in this jurisdiction or whether by judicial precedent of this Territory it has been held that the debts of an executor to his testator are in the same category as debts due from other sources we deem it unnecessary to decide for the reason that in our opinion the liability of the surety in both instances is the same. The undertaking of the surety is contractual. It is to indemnify those interested in the estate against the breach of duty by its principal. The surety by its undertaking does not guarantee the ability of its principal to pay his debt to the estate. The common law rule is the outcome of the anomaly of the debtor and executor being one and the same person and the consequent loss of the remedy by reason of the inability of the executor to sue himself and was invoked in equity for the protection of creditors, legatees and next of

kin. At best it is equitable fiction calculated to promote justice and not intended to impose injustice. Equity must yield to equity. It would be inequitable to hold a surety responsible for the failure of his principal to perform an impossibility. If the executor is unable to pay his indebtedness to the estate in full it certainly would work an injustice upon the surety to require him to make up the deficiency. (See *McEwen v. Fletcher,* 146 N. W. (Iowa) 1 and cases cited; *Re Howell's Estate,* 92 N. W. (Neb.) 760; *Walker's Estate,* 57 Pac. (Cal.) 991.)

Ordinarily the measure of the liability of a surety upon an executor's bond is the loss or damage suffered by the estate by reason of the failure of the executor to perform the duties imposed upon him by law. The solution of the surety's liability in the instant case therefore depends upon the determination of the duty that the Security Trust Company owed to the estate of Manuel Branco, deceased, by reason of its appointment as executor under the will of said decedent.

One of the first duties of an executor of an estate is to reduce the property of the deceased to possession. Where such property includes debts due the decedent his duty is to collect such debts and in so doing he is bound to use that diligence which an ordinarily prudent man would exercise in the management of his own affairs. (*Powell v. Hurt,* 17 S. W. (Mo.) 985.) Due diligence depends upon many facts and circumstances not the least of which is the financial condition of the debtor. Where the executor is also a debtor obviously knowledge of his own financial condition is imputable to him as executor. And he must exercise such diligence as an ordinarily prudent man would exercise with full knowledge of the financial condition of the debtor. (*McEwen v. Fletcher, supra; In re Haffey,* 10 Mo. App. 232.) Hence the rule that where the debtor of the testator is appointed executor

of the latter's will it is his duty to pay such debt when the same is or becomes due to the full extent of his then ability to pay. (23 C. J., title "Executors and Administrators," Sec. 459, p. 1202 and cases cited; *Condit v. Winslow*, 5 N. E. (Ind.) 751.) He may be insolvent as that term is used in the Bankruptcy Act, but if his assets are sufficient to satisfy his indebtedness to the estate it is his duty to do so and for a failure so to do his surety is liable to the extent of his principal's ability and failure to pay. Of course if the executor at the time of his appointment and thereafter is insolvent to the extent of being unable to pay anything on account of his indebtedness his surety is absolved from all liability. (*In re Howell's Estate, supra; Walker's Estate, supra; Baucus v. Stover*, 89 N. Y. 1; *In re Georgi*, 47 N. Y. S. 1061; *State ex rel. McClamrock v. Gregory*, 22 N. E. (Ind.) 1.) That such payment may constitute a preference is immaterial. A preference by a debtor of his creditor is legal. Nor are we concerned that the debtor's liabilities are in excess of his assets. The duty of the executor to pay is not measured by his ability to pay all his creditors at once, as upon an assignment by him for their benefit, or in the case of a trust company upon dissolution, but by his ability to pay his particular indebtedness to the estate when the same is or becomes due. (*Walker's Estate, supra; McEwen v. Fletcher, supra; Lyon v. Osgood*, 7 Atl. (Vt.) 5.) It might be rejoined that were the debtor to prefer his creditor bankruptcy proceedings might be instituted, the result of which would be a *pro rata* participation in the assets of the bankrupt. If such contingency arose and the debtor were forced into bankruptcy such contingency would be a complete defense available to the surety upon any claim by the estate in excess of the amount distributed to its principal by the trustee in bankruptcy.

Nor is it a defense for the executor to say that had

he paid his indebtedness to the estate he would have to "close his doors." The consequences to himself of the performance of his legal duty are immaterial. If other creditors of the executor should object to payment to the estate they have their remedy. But the executor will have performed his duty, and if upon proceedings instituted by such creditors the payment to the estate be set aside or decreased that is a loss to the estate which results not from the breach of a legal duty by the executor but from the adjustment of the legal rights of creditors and one for which the surety on the executor's bond is not liable.

Hence the liability of the United States Fidelity & Guaranty Company resolves itself into the sole question of whether the Security Trust Company upon its appointment and thereafter until the appointment of the receiver was able to pay its indebtedness to the Branco estate when the same was or became due, and if so how much.

The evidence taken below is vague and in a measure unsatisfactory but there is sufficient to sustain a finding that the Security Trust Company at the time of its appointment and since and up to the time of the appointment of the receiver was able to fully pay the principal of the notes then due and all interest then due. According to the evidence, on August 31, 1921, but two days subsequent to the date of its appointment as executor, the assets of the Security Trust Company, exclusive of the balance remaining unpaid upon stock subscriptions, were, according to an appraisement made on February 20, 1922, the date of the appointment of the receiver, of the reasonable value of $254,115.30. These assets included cash on hand and in bank of $36,603. An appraisement made one year later, during which period the business of the trust company was being wound up, fixed the same assets as existing on August 31, 1921, at the reasonable value of $213,237.12.

In the meantime considerable of the assets have been reduced to cash and on February 20, 1923, the indebtedness of the company had been reduced from $259,751.71 to $159,546.28. Included in the liabilities of the company on August 31, 1921, was an item of $122,000 which the trust company claimed represented cash and securities which it held as trustee for clients. The exact amount of each does not appear. Nor is the evidence entirely clear that all of this amount were trust funds. But assuming that to be the fact there were obviously sufficient assets remaining after the setting aside of these trust funds to satisfy the notes that had matured together with all interest then due upon its total indebtedness. The appraisements were based upon the market value of the assets of the company. The market value was the price at which the same might have been converted in the open market. If convertible in the open market it was the duty of the executor to do so and use the proceeds in satisfying the indebtedness to the estate. Surely within the five months that it acted as executor, with assets exclusive of trust funds valued in February, 1922, at $122,237.12 and a year later at $91,546.28, it could have realized sufficient cash to pay its indebtedness to the estate. To sit supinely by and say that it could not have done so is beside the point. The result of its efforts on behalf of other creditors is the best evidence of its ability in that regard. Prior to the appointment of the receiver the Security Trust Company transferred to the People's Bank at Hilo $25,000 worth of securities owned by it for their face value on account of its then indebtedness to the bank. In September, 1921, for a consideration of $19,500 it assigned to Bishop & Company for its face value a mortgage which it held upon certain premises of Dr. Sexton at Hilo. Later but during the same period it assigned a mortgage to the Chinese-American Bank for $8000. Whether

Bishop & Company and the Chinese-American Bank were creditors of the trust company does not appear. If so the fruits of vigilance are apparent. These creditors by the exercise of diligence were able to secure the full payment of their claims. If not creditors, these transactions are the best evidence of what could have been done by the executor with its convertible securities. On the other hand, according to the undisputed evidence the executor did nothing towards satisfying its indebtedness to the estate. There is not a scintilla of evidence to the effect that it made any effort whatever to convert any of its available assets for the purpose of liquidating in whole or in part the claim of the estate against it. The receiver under less favorable conditions realized $93,348.42 from converted assets.

Debts due an estate are presumed to be collectable. The burden of proof of due diligence in their collection is upon the executor. As sometimes said, "The burden rests upon the representative to show that a failure to collect was not due to any lack of good faith or diligence on his part." 23 C. J., title "Executors and Administrators," Sec. 461, p. 1206.

But in addition to these assets there was a remaining unpaid balance of stock subscriptions. According to the affidavit attached to the articles of incorporation the stock of the trust company was at the time of its organization fully subscribed but only fifty per cent. paid in. It is to the remaining fifty per cent. unpaid balance that we refer. It is the contention of the surety that this balance was not legally available. To this we cannot agree. It is true that the form of the stock subscriptions does not appear. Nor are the terms or conditions under which the several subscribers subscribed to stock of the Security Trust Company disclosed. In the absence, however, of any showing either by the articles of association, the

by-laws or the subscriptions themselves that there were any limitations placed upon the authority of the corporation to call in the remaining unpaid balance of stock subscriptions it must be presumed that such balance was payable upon demand.

A call for the balance of unpaid stock subscriptions for the purpose of paying corporate debts would obviously be for a legitimate purpose and within the powers of the directors of the company to make. The existence and the necessity of the payment of the company's notes to the Branco estate cannot be denied. The advisability of immediate conversion of this outstanding indebtedness into cash was abundantly apparent. Under the circumstances no legitimate objection could have been made by the stockholders to a call for the remaining unpaid stock subscriptions. If amenable to call the stock subscriptions were enforceable at the instance of the company similarly as any other contract for the payment of money. The present value of these unpaid stock subscriptions was readily computable. According to the undisputed evidence they were reasonably worth in the aggregate $40,680. Such value was an asset and when received could have been used by the trust company to pay its indebtedness to the estate.

No effort was made, however, by the Security Trust Company to call in or collect this remaining unpaid balance of stock subscriptions. In this regard it also failed to exercise that diligence which the law demands.

The evidence is overwhelming that the Security Trust Company at the time of its appointment and thereafter and until the time of the appointment of the receiver had sufficient assets with which to satisfy that part of its indebtedness to the estate of Manuel Branco, deceased, which had then matured, and that it utterly failed to exercise that diligence that the law required in satisfying

such indebtedness, for the failure of which the surety on its official bond is liable.

The principal indebtedness evidenced by the note of March 3, 1921, however, stands upon a different footing. It was not due until March 3, 1922. Prior to its maturity a receiver was appointed for the trust company, to whom by virtue of section 3371, R. L. 1915, was committed the possession of all the assets of the company and the authority to collect all debts due the company. Upon the appointment of the receiver the company was rendered powerless to act in the premises. Until this note was due the trust company was under no obligation to pay it. Until there was an obligation to pay there was no duty to collect. There is no intimation that the proceedings for the appointment of a receiver were not instituted timely. Under the circumstances there is no breach of duty shown in respect to the collection of the note of March 3, 1921, and for any loss that the estate may sustain by reason of its noncollection the surety is not liable.

The surety further contends that the Security Trading Corporation, an Hawaiian corporation previously having its place of business in the same office as the Security Trust Company, Limited, was a mere department or instrumentality of the Security Trust Company and in determining the net assets of the Security Trust Company there should be included in its liabilities the liabilities of the Security Trading Corporation. In support of this same contention below there was made a part of the record the evidence taken before the trial court in the case of *Henry Waterhouse Trust Company, Limited, Receiver of Security Trust Company, Limited,* v. *Home Insurance Company of Hawaii, Limited.* In that case this court held on appeal that the two corporations were separate entities and the Security Trust Company, Limited, was not responsible for the debts of the Security Trading Cor-

poration. (See 27 Haw. 572.) Sufficient, however, has already been said herein to indicate that the question of the liabilities of the Security Trust Company, Limited, further than the same might include trust funds, is immaterial.

The decree appealed from is reversed and the cause remanded with instructions to the trial court to modify its decree limiting the liability of the surety to the amount of the indebtedness, both principal and interest, due from the Security Trust Company to the estate of Manuel Branco upon the date of the appointment of the Security Trust Company as executor and thereafter until the appointment of the receiver.

*Robertson & Castle* for the surety.

*Harry Irwin* and *J. W. Russell* for the executor.

*W. H. Smith* for the administrator *de bonis non.*

*J. C. Kelley* and *W. S. Wise* for the widow and other heirs filed no brief.

### DISSENTING OPINION OF PERRY, J.

The condition of the bond sued on in this case is that if the Security Trust Company, Limited, which had been appointed executor of the decedent's estate, should "faithfully perform the duties of said office, according to law," then the obligation would be void, otherwise of full force and effect. The surety thereby guaranteed the fidelity and the diligence of the executor but did not guarantee its financial ability. The nature and the extent of the liability of the surety are to be found in its contract and it is immaterial in this case what the liability of the principal was at common law or whether the common law rule in that regard was incorporated as a part of the law of this Territory under section 1 of the Revised Laws of Hawaii. Even though this court would be obligated by virtue of the statute to hold, as against the principal,

that by a fiction of the law the sum of $82,000 in question in this case became realized assets in the hands of the executor upon its appointment as such, it does not follow that the liability of the surety would be the same.  The latter is to be ascertained purely from the contract.

It was the duty of the Security Trust Company as executor to exercise in the collection of this debt of $82,000 the same degree of care and diligence which an ordinarily careful and prudent executor or administrator would have exercised in the attempted collection of a debt from another person as debtor.  Assuming that the evidence in this case requires the finding, as it probably does, that the trust company was not diligent but on the contrary was negligent in the matter of the collection of this claim on behalf of the estate, the question next arises, to what extent were the heirs or other beneficiaries of this estate damaged by the failure of the executor to exercise due care and diligence?  In my opinion it is impossible to say in this case, upon the evidence now before the court, that the finding must necessarily be that the trust company at the time of its appointment was financially able to pay to itself as executor the full amount of $82,000 simply because it had at that time assets of that value.  Findings of fact are not within the province of this court to make in a law case such as this when the evidence is susceptible of more than one alternative finding.  There is evidence in this case from the witness Collins (Tr. pp. 22-23) that if at the time of the appointment demand had been made upon the trust company, and pressed, for the payment of $82,000 on this one claim of the decedent, "they could not have made it because they had only $36,000 cash in the bank to the credit of the Security Trust Company, Limited," and that the company "would have to suspend and close its doors."  Whether or not this statement was true or exact is not for this court to

say. The matter would have to be left to the trial court for a finding on the point. To say now that by being active and diligent the trust company as executor could have collected from itself as debtor the sum of $82,000 as a preferential payment is not the equivalent of saying that an ordinarily careful and prudent executor using activity and diligence could have finally obtained that much money for the estate as a result of his efforts. To arrive at any such result we would have to shut our eyes to the ordinary procedure of human beings similarly situated. The ordinary course of ordinary creditors under similar circumstances (the evidence shows that at that time the Security Trust owed large amounts to other creditors) would have been to step in immediately and with the aid of bankruptcy or receivership proceedings endeavor to secure for themselves a share of the assets of the moribund corporation. Whether the financial condition of this corporation at that time was such as to have permitted it to borrow the money or otherwise to secure the funds for paying, even preferentially, Branco's claim, was a question of fact for the trial court alone to determine. If it were to believe Mr. Collins' evidence, it might also well have believed that any legal compulsion at that time made in the collection of that much money would have resulted in bankruptcy or receivership proceedings and, consequently, in a pro rata division of the available property amongst all the creditors in the same classes. Receivership proceedings were in fact instituted less than six months after the appointment of the executor.

In my opinion the judgment ought to be set aside and a new trial granted in order to permit of findings of fact in accordance with these principles.