## IN THE MATTER OF THE ESTATE OF
## THZ FO FARM, DECEASED.

### No. 2618.

SUBMITTED JANUARY 6, 1947. DECIDED FEBRUARY 7, 1947.

KEMP, C. J., PETERS AND LE BARON, JJ.

448

OPINION OF THE COURT BY PETERS, J.

This is a motion by the former attorney of an executor to have the circuit judge at chambers fix a fair and reasonable attorney's fee for the professional services theretofore rendered by him on behalf of the executor in the matter of the estate of which the latter was the legal representative. At the time the motion was filed, the attorney had been discharged and the matter of the estate was still pending before the circuit judge at chambers to whom the motion was addressed.

The motion itself is merely in the form of a prayer "to determine and fix a fair and reasonable attorney's fee for services rendered on behalf of the Executor." Neither the particulars of the professional services rendered nor their estimated reasonable value is set forth in the motion. In the absence of objection thereto the motion was heard as filed. While a motion in the form of a prayer might be appropriate in a summary proceeding to recover an attorney's fee where all the professional services for which compensation is prayed were directly or indirectly within the knowledge of the judge to whom the motion was addressed, where as here the services rendered included services performed out of the presence of the judge and of which the latter had no personal knowledge direct or indirect, the motion should at least make appropriate reference to the particulars of the latter service and their reasonable value.

It developed, upon hearing of the motion, that there had been no express contract of employment between the attorney and the executor fixing the compensation of the former for services rendered or to be rendered on its behalf. Hence, the attorney for the executor was entitled

to recover the reasonable value of the services necessarily rendered by him on behalf of the executor in the matter of the estate. The attorney's services included both the ordinary professional services in the probate of a will and the settlement of the decedent's estate and also special services in the matter of the estate, some of the latter of which were rendered before the circuit judge at chambers in probate and some out of his presence and not within his knowledge either directly or indirectly. With the services performed in his presence and with which he was consequently familiar, the judge in fixing the allowance could act upon his own knowledge of their character and value.[1]

For want of anything better, the following particulars of the special professional services rendered are quoted from appellee's brief: "1. Filing petition for partial distribution and order of notice of hearing and a hearing thereon. 2. Filing petition for allowance of secured claim and a hearing thereon. 3. Drafting of five (5) deeds for the estate to convey lands which were sold on an agreement of sale executed by the decedent during his lifetime. 4. Consultation with Mr. White of the Hawaiian Trust Co., Ltd., on the matter of an inter vivos transfer of a dairy by the decedent in order to aid Mr. White in determining what the gross estate of the decedent was at the time of his death. 5. Services rendered regarding the transfer of decedent's interest in the 'JEWEL BOX', a co-partnership. 6. Rendering of opinion upon the exercise of the option by the lessee to purchase regarding a deposit of $1,000.00 deposited by the lessee of the decedent for security. 7. Collection of about $19,700.00 due the estate from En Oi Farm, brother of the decedent, under circumstances where the Executor was unable to effect collection and had to refer the matter to the appellee. In the col-

---

[1] Jacoway v. Hall, 67 Ark. 340, 55 S. W. 12, 14; Phoenix Ins. Co. of Hartford v. Fleenor, 104 Ark. 119, 148 S. W. 650, 654.

lection of this item the appellee attended two or three conferences at the office of the Executor. As an incident to this collection, the appellee drew the necessary mortgage instruments and note covering the secured obligation of En Oi Farm to the estate."

For all the services rendered by the attorney for the executor, both ordinary and special, the circuit judge allowed him the sum of $4,500. The executor appealed upon the ground that the amount allowed was excessive.

The ordinary professional legal services involved in the probate of a will and the settlement of the testator's estate are too well known to require enumeration. The proceedings in the instant case were true to type except that, pending administration, the executor petitioned for partial distribution to itself as ultimate trustee of certain real property of which the testator died seized, producing little or no income, so as to enable it by the sale thereof to realize sufficient funds to pay taxes, bequests and expenses of administration instead of selling closely held family corporation stock and the executor also petitioned the court for the allowance of a secured claim against the estate held by the Liberty Bank. The subjects of the exceptions are hereinafter discussed in connection with the special professional services performed. There is also evidence to the effect that the attorney for the executor prepared and filed the election of the widow to take under the will.

For the ordinary services performed by him in the probate proceedings, the attorney for the executor, when a witness on his own behalf in support of the motion, asked $2,500. In this request he was supported by three members of the bar who testified as experts on the value of the services rendered. One of the attorneys gave it as his opinion that $4,000 would be a reasonable normal fee; another that a reasonable fee would be one half of the

executor's fees, or approximately $3,000, and another that the fee should be the same in amount as the aggregate statutory commissions allowed executors in this jurisdiction.

It appears, however, from the evidence that in probate proceedings where a trust company is the executor it is at present customary for the Honolulu bar, in the absence of an express contract fixing compensation, to charge for the ordinary legal services involved in the probate of a will and the settlement of the testator's estate an amount equal to from one third to one half of the local statutory commissions allowed executors upon the principal of estates of decedents. The statute allows a graduated percentage upon the principal of the estate of five per centum for the first thousand dollars, four per centum for the next nine thousand dollars, three per centum for the next ten thousand dollars, two per centum for the next thirty thousand dollars and one per centum for all over fifty thousand dollars.[2]

Apparently the customary charge for such legal services has attained the dignity of a standard rate and is observed generally by the Honolulu bar irrespective of the professional standing of the attorneys employed. Moreover, this method of determining the compensation allowable to attorneys for executors has been uniformly followed in the first judicial circuit in estates the principals of which were of similar amount.[3]

---

[2] R. L. H. 1945, § 9757.

[3] Atkinson, $256,345—$1,500; Andrade, $250,000—$1,200; Spitzer, $396,922—$2,000; Lewers, $375,985—$2,500; Farrington, $222,000—$1,500; Wilder, $221,000—$1,350; Elms, $396,000—$2,500; Goodale, $393,000—$1,250; Young, $275,000—$2,000; McWayne, $222,000—$1,500; Anderson, $218,000—$1,250; McInerny, $700,000—$4,000; Tenney, $264,577—$1,450; McKeague, $211,461—$1,750; Halstead, $305,688—$1,400; McStocker, $282,358—$1,300; Swanzy, $276,524—$1,250. These are comparatively recent cases in some of which the allowances of counsel fees were made as late as the year 1946.

It seems to be well settled that "where services of the same general nature and extent are of such frequent recurrence among the legal profession that a certain fee, or a certain basis for its estimation, has become customary and usual in such cases, evidence thereof is proper to show what is reasonable."[4] Moreover in fixing the amount of a reasonable fee the primary test is the customary fee obtaining for similar services in the place where the services were performed.[5] Hence the standard rate of fees charged at present in Honolulu for the ordinary services involved in the probating of a will and the settlement of an estate where the executor is a trust company controls over the opinion of experts of what is a reasonable fee for the services of the attorney in the particular case.[6]

The statutory commissions allowed the executor upon the principal of the estate, according to the final accounts, were $3,750.70. Unfortunately the allowance made by the judge in probate was in gross and there is no specific allocation of the amount attributable to the services performed in connection with the ordinary services involved in the estate and its settlement. But from the remarks of the judge when rendering his decision, contained in the transcript of the evidence, it would appear that he was persuaded by the evidence of the standard rate obtaining at present in Honolulu in probate matters where the executor was a trust company and that his opinion of the reasonable value of such services was based upon the standard rate.

It should be borne in mind that in summary proceedings by motion for the allowance of an attorney's fee in the matter of an estate of which the movant was the attorney for the executor, that the judge presiding upon

[4] Faulk & Co., et al. v. Hobbie Grocery Co., 178 Ala. 254, 59 So. 450, 454.

[5] Reynolds et al. v. McMillan, 63 Ill. 46, 47.

[6] See n. 5.

the motion is not bound by the opinion of experts of the reasonable value of the services rendered by the movant; that the judge "is an expert himself and knows as well as a legal expert what are reasonable attorney fees,"[7] and that the amount of attorney's fees is "within the judicial discretion of the court, and in fixing that amount the trial court * * * [may] proceed upon its own knowledge of the value of the solicitor's services."[8] It also appears from the transcript of the judge's remarks upon rendering his decision that the allowance of $4,500 in gross was in full for all ordinary and special services rendered by the attorney for the executor, including the services rendered in connection with the indebtedness of En Oi Farm to the estate hereinafter referred to, which he considered separately of the value of $2,500. Allocating to the other special services for which compensation was prayed the respective amounts attributable to them, it would appear that in the opinion of the presiding judge the standard rate was applicable to the ordinary services rendered in the matter of the estate, that in his opinion such services were reasonably worth one half of the amount received by the executor as statutory commissions on principal, and we affirm that conclusion.

We shall now direct our attention to the special services performed by the attorney for the executor for which compensation was asked, identifying our remarks with the same number used in the particulars of special services heretofore quoted:

1. The evidence established the sum of $150 as being a reasonable fee for the services rendered by the attorney

---

[7] Federal Oil Marketing Corporation v. Cravens, 46 F. (2d) 938, 940. (See also Head v. Hargrave, 105 U. S. 45, 47; Shackleford v. Ark. Baptist College, 181 Ark. 363, 26 S. W. (2d) 124.) The average annual administrations in the first circuit from 1937 to 1946 were 1094.

[8] Harrison v. Perea, 168 U. S. 311.

for the executor in connection with the filing of the petition for partial distribution, and is affirmed.

3. Similarly, $25 for each of the five deeds to convey lands which were sold on an agreement of sale executed by the decedent during his lifetime.

2. But no fee may be allowed for the services rendered upon the petition for the allowance of secured claim. The proceeding was an idle gesture. The claim of the Liberty Bank, the subject of the petition, was filed five days after the expiration of the time fixed by the notice to creditors for the presentation of claims against the estate. The last day to file claims was May 13, 1944, and the claim was presented to the executor on May 18 following. The subject of the claim was a promissory note signed by the deceased upon which was pledged $41,000 of his securities and about $5,200 in market value of securities belonging to his wife and two children.

This claim was barred by the statute of nonclaim[9] and the executor under the express provisions of the statute was prohibited from paying it. The executor could not waive the bar or the rejection of the claim.[10] If, though the claim itself was barred, the pledge given to secure its payment remained legally enforceable, this was so by reason of subsisting substantive rights of the pledgee against the securities pledged and not otherwise. The statute of nonclaim having tolled, the only questions remaining in doubt were whether the pledge was legally enforceable and if so the method that might properly be invoked to obviate foreclosure and conserve to the estate the securities pledged by the testator and of which he died possessed. If the executor deemed it advisable to secure a judicial de-

---

9 R. L. H. 1945, § 12022.

10 Defries v. Cartwright, 10 Haw. 249; Estate of S. Kaiu, 17 Haw. 514; Kennedy v. Sniffen, 23 Haw. 115.

termination of the subsisting rights of the pledgee against the security pledged, and if favorable to the pledgee to further secure the judicial approval of the method to be devised to obtain the desired result, appropriate remedies were available, either to it, the pledgee, or both. But the allowance by the probate court of the barred claim decided nothing. The order of allowance was abortive, unnecessary, and of no benefit to the estate.

4, 5 and 6. The evidence is insufficient to support findings of the professional services rendered by the attorney for the executor in connection with the subjects of these items. In the absence of proof sufficient to sustain a finding of the character of the professional services rendered, the judge was not in a position to determine their value. Vague generalities are not enough to sustain a claim for professional services rendered. The supporting proof should be no less than that required in an ordinary action of assumpsit for work and labor performed. All of the services to which these items refer were performed by the attorney outside of the presence of the court and were not within the personal knowledge of the judge. In the absence of evidence reasonably calculated to show the character of the services rendered, no allowance can be made.

7. To the professional services rendered in connection with this matter the circuit judge apparently attributed a value of $2,500 and the allowance in gross of $4,500 may be considered as made up in part of this amount.

To the contention of appellant that the attorney's fee allowed for this particular service is excessive, the appellee rejoins that while this court upon appeal from decisions of circuit judges at chambers has the power to review, reverse, affirm, amend or modify such decision in whole or in part,[11] the findings of a circuit judge at chambers

---

11 R. L. H. 1945, § 9505.

upon conflicting evidence is entitled upon appeal to great weight; that the evidence upon the subject of the services rendered by the attorney for the executor was conflicting and the trial judge having adopted the evidence of the movant upon the character and extent of the services rendered the findings should not be disturbed and the allowance affirmed. We are not unmindful of the rule last referred to. And assuming but not deciding that it is applicable, we have accorded to it the consideration it deserves. But the application of the rule does not bind this court to the acceptance of conclusionary evidence nor to the adoption of assumptions erroneously entertained by all parties concerned of the legal liability of the estate for the professional services rendered.

As a witness on his own behalf, the attorney for the executor testified that the indebtedness of En Oi Farm as it existed on July 29, 1944, was a "collection" account, assigning as his reasons for his use of that term the respective ages of the notes upon which the aggregate indebtedness was predicated, En Oi Farm's credit standing and the imposition by the executor upon him of the entire responsibility of the "collection" of the En Oi Farm indebtedness. According to his evidence, it was entirely due to his own personal efforts, exclusively of those of the executor, that the indebtedness of En Oi Farm in the sum of $19,700 was "collected." That En Oi Farm's indebtedness to the estate was a "collection" account was a mere conclusion. Findings of circuit judges at chambers to which the rule applies are presumably based upon conflicting evidence and not upon conflicting conclusions. And we shall so consider them. Nor does the rule apply to erroneous hypotheses of the legal effect of findings of fact. If conceding to the findings of the circuit judge the weight accorded by the rule it appeared that the services

of the attorney included services which the executor itself should have performed, in other words, services purely executorial, the value of the latter should have been excluded from the consideration of the motion. The motion sought an allowance of an attorney's fee against the estate. For compensation for professional services purely executorial the estate is not liable. For such services the attorney is relegated to his remedy against the executor personally.

It has been repeatedly held in this jurisdiction that a fiduciary is not warranted in paying out money of the estate of which he is the legal representative for the performance of duties legally devolving upon the fiduciary himself nor is he authorized to employ counsel at the expense of the estate to do what he himself should do and for the doing of which he is compensated by his commissions.[11] The same rule applies to a summary motion for counsel fees.

It is the duty of the executor to reduce to possession the assets of the estate of which he is the legal representative and "Where such property includes debts due the decedent his duty is to collect such debts and in so doing is bound to use that diligence which an ordinarily prudent man would exercise in the management of his own affairs."[12] So that the question of whether the amount attributable to this particular service and included in part in the allowance is excessive depends for its solution not alone upon the determination of the character and extent of the services performed by the attorney for the executor but whether such services were wholly legal or partly legal and partly executorial, for to the extent that they are

[11] Estate of A. Enos, 18 Haw. 542; Estate of Mary E. Foster, 34 Haw. 376. (See also Estate Bernice P. Bishop, 36 Haw. 403.)

[12] Estate of Branco, 27 Haw. 655.

458

executorial the compensation for their performance cannot be allowed against the estate.

The facts are simple. En Oi Farm, the debtor, was the decedent's brother. The decedent during his lifetime had loaned money to his brother and had assisted him financially by endorsing his note to the Chinese American Bank, a local banking institution. The loan was evidenced by a note dated January 1, 1936, and at the time of the death of the decedent on November 30, 1943, the balance due thereon, principal and interest, was $15,709.37. This indebtedness was unsecured. In December, 1943, the month following his brother's death, En Oi Farm called at the office of the executor to make a payment on account of this note and when advised by the executor that they had no record of the note and that it had not been found among the effects of the deceased, he promptly, at the request of the executor, executed a prepared duplicate. En Oi Farm made payments monthly on account of the balance of principal and interest due on this note beginning January 4, 1944, so that on July 29, 1944 it had been reduced, including both principal and interest, to the sum of $3,944.16. The attorney for the executor had nothing to do with this matter and it was not called to his attention until late in July or early in August, 1944, after the executor had taken up and discharged the liability of the estate to the Chinese American Bank, the details of which follow.

En Oi Farm was also indebted to the Chinese American Bank in the sum of $12,900 and interest, evidenced by his promissory note to the bank dated November 29, 1932. This note was also unsecured. Upon this note Thz Fo Farm, the decedent, was an endorser. The endorsement was likewise unsecured. The balance due on this note on July 29, 1944 was $12,675 principal and $3,132.88 interest,

making a total of $15,807.88. On July 29, 1944 the executor paid and discharged the note of En Oi Farm to the Chinese American Bank by paying on account of principal the sum of $12,675 and interest $3,132.88. Hence, on July 29, 1944, En Oi Farm was indebted to the estate in the sum of $3,944.16, the balance remaining unpaid on account of his note of January 1, 1936, plus the sum of $15,807.88 paid by the executor to the Chinese American Bank in payment and discharge of the note of En Oi Farm of November 29, 1932, making a total indebtedness of $19,-752.04.

It was at this juncture that the executor called in the attorney for the estate for his advice and assistance. The attorney for the executor advised the latter to cause a search to be made of the records of the Bureau of Conveyances to ascertain of what real estate En Oi Farm and his wife had the record title, the information in respect to the wife being necessary in the event that it developed that En Oi Farm had put real estate in his wife's name in fraud of creditors. This had already been done by the executor. He also suggested that the executor obtain from En Oi Farm and his wife a mortgage of their real estate by way of security of En Oi Farm's aggregate indebtedness to the estate, adding that in the event of refusal attachment proceedings should be instituted. He at the same time outlined the strategy of sending for En Oi Farm and requesting the security but advised against making any reference to alternative attachment proceedings. This was done. The executor sent for En Oi Farm and there was a conference with him at which the attorney was present. The details of that conference do not appear. From the evidence and inferences of which it is capable it would seem that a request for security was made and that the request was considered favorably by En Oi Farm. There is no evidence showing contumacy on the part of En Oi

Farm. Apparently no difficulties were encountered because none are referred to in the evidence. One of the officers of the executor testified that En Oi Farm was very cooperative. This is not denied. There were subsequent conferences. Apparently they were concerned simply with the details and, considering the time necessary prior to their date for the preparation of the documents ultimately executed, the negotiations were not prolonged. The ultimate was a mortgage by En Oi Farm, joined therein by his wife, to the extent of her interest in the property mortgaged, of real estate belonging to En Oi Farm given to secure the aggregate indebtedness of the mortgagor as it existed on July 29, 1944, the facts of which were recited in the mortgage, and a new installment promissory note executed jointly by En Oi Farm and his wife for the aggregate amount of En Oi Farm's indebtedness to the estate, secured by a mortgage of real property which we are given to understand was the real property of the wife. All these documents are dated August 31, 1944. This indebtedness was refinanced by the executor on September 8 following and the indebtedness of En Oi Farm to the estate fully discharged.

It is true that both the note to the decedent and that to the Chinese American Bank were old notes. But that is understandable when the relation of the parties is considered. And the relation between the brothers is thrown in bold relief by the absence of security in both cases. The decedent not only loaned money to his brother without exacting any security but he similarly endorsed his brother's note to the bank without security. Immediately that Thz Fo Farm, the decedent, passed away, however, En Oi Farm proceeded immediately to make payments on account of his personal note to the decedent and, without any urging on the part of the executor, substantially reduced the amount thereof in the short period of six months. It

may be that En Oi Farm's credit was not good. Perhaps during that period it was the extent of his ability to pay. It is conceivable that for want of available cash he took advantage of the time that would necessarily intervene between the date of death of the decedent and the inevitable demand upon him by the executor to reimburse the estate for the amount necessary to discharge his note at the bank. But the fact that his credit was not good does not indicate an inability to ultimately discharge his indebtedness to the estate. It is sufficient to observe that subsequent developments demonstrated that he was solvent and amply able to respond when necessary. It is common knowledge, of which this court may take notice, that with the inception of World War II came a very rapid increase in real estate values assuming, by November, 1943, an inflationary trend which no doubt redounded directly to the advantage of En Oi Farm and indirectly to the estate as witnessed by the ability of the executor, within the course of practically a week after the execution of the mortgages referred to, to refinance the indebtedness and finally discharge En Oi Farm's indebtedness to the estate.

To characterize the claim of the estate against En Oi Farm as a "collection account," in other words, an account that had been committed by the creditor to the attorney for the purpose of enforcing payment by suit, if necessary, is a distortion of the facts. Resort to legal process was suggested as an alternative in the event of the refusal of En Oi Farm to give security. The contingency upon which the alternative depended never occurred.

In our opinion the only services performed by the attorney for the executor that may be considered legal in their nature were the advice and suggestions given and made to the executors in the first instance, the coercive effect that the attorney's physical presence lent to the conferences which he attended, and the security documents

which he finally drafted. Whatever other services he performed in this matter were purely executorial for compensation of which, if any, he must look to the executor personally. Under the circumstances the allowance of $2,500 for the services rendered by the attorney for the executor in this particular matter was and is excessive. In our opinion the reasonable value of said services was and is the sum of $500 and to the extent that the allowance exceeded that amount it constituted an abuse of discretion and must be disallowed.

No reference was made in appellee's brief to the amount and value of the services involved in preparing and filing the election of the widow to take under the will. Inasmuch, however, as it was not excluded from the consideration of the trial judge it must be considered by us. The interests of the widow and those of the executor were inconsistent and the previous employment of the attorney as the attorney for the executor foreclosed his professional representation of the widow in her interest in the estate. Under the circumstances this service was incorrectly considered by the trial judge in fixing a reasonable fee.

In our opinion the reasonable value of all the services rendered by the attorney for the executor for which compensation is allowable is the sum of $2,650.35, itemized as follows: ordinary services in the matter of the estate, $1,875.35; special services, item number 1, $150; item number 3, $125; item number 7, $500.

Consistently with the views herein expressed, the allowance of $4,500 made by the circuit judge is reversed and the cause is remanded accordingly, with instructions to enter an appropriate order of an allowance of an attorney's fee for the services rendered by the attorney for the executor on behalf of the estate in the sum of $2,650.35.

*Fukushima & Morita* for appellee.
*Heen & Kai* for executor-appellant.