71 P.3d 437

**CHUCK JONES AND MacLAREN, a Hawai'i partnership, Plaintiff–Appellee,**

v.

**Deanna WILLIAMS, Individually and as Guardian of Shelley A. Williams, a minor; Shelley A. Williams, Defendants–Appellants.**

**No. 24195.**

Intermediate Court of Appeals of Hawai'i.

May 14, 2003.

Certiorari Denied June 23, 2003.

Michael L. Freed, Leslie C. Maharaj, Honolulu, (Michael L. Freed & Associates), on the briefs, for defendants-appellants.

Ward D. Jones, (Ward D. Jones, AAL, ALC), Alexander T. MacLaren, Honolulu, (Alexander T. MacLaren, AAL, ALC), on the briefs, for plaintiff-appellee.

BURNS, C.J., LIM and FOLEY, JJ.

Opinion of the Court by LIM, J.

In this case of unpaid attorneys' fees, Defendants–Appellants Deanna Williams, individually and as guardian of Shelley A. Williams, a minor, and Shelley A. Williams (collectively, the Williams), appeal the March 5, 2001 first amended final judgment of the circuit court of the first circuit.[1] The judgment was based upon the court's September 11, 2000 order granting summary judgment in favor of Plaintiff-Appellee Chuck Jones and MacLaren, formerly a Hawai'i partnership of law corporations (CJM).

On appeal, the Williams complain that the court erred in granting summary judgment against them, because

(1) CJM failed to produce admissible summary judgment evidence showing the amount of attorneys' fees and costs it sought to recover or that the same were reasonable, (2) failed to establish the existence of an express contract with [the] Williams to provide them with legal services, and (3) a factual issue existed about CJM's standing to sue.

Opening Brief at 1.

We affirm the court's judgment on the issue of liability. We also affirm the court's award of some of the attorneys' fees and costs claimed by CJM. However, because a genuine issue of material fact existed as to the remainder of CJM's attorneys' fees and costs, we vacate that part of the court's judgment and remand.

## I. Background.

On December 16, 1998, CJM filed a complaint against the Williams, seeking unpaid attorneys' fees. The pertinent allegations of the complaint follow:

*COUNT I—BREACH OF CONTRACT*

. . . .

3. That on or about October 28, 1996, [CJM] and [the Williams] entered into an hourly fee agreement, which was also confirmed by way of a letter from [CJM]. Pursuant to that agreement, Defendant DEANNA WILLIAMS, individually and as legal guardian of SHELLEY A. WILLIAMS who was still a minor, contracted to hire [CJM] to represent her and her daughter in an action they had previously filed styled *Deanna Williams, et al[.] v. Steve Silla et al[.],* Civ. No. 96–3260–08 First Circuit Court, State of Hawai'i[ ] ("*Silla* action")[,] and a second ac-

---

1. The Honorable Karen N. Blondin, judge presiding.

tion they had previously filed styled *Deanna Williams et al[.] v. Na Pali Haweo Community Ass'n,* Civ. No. 97–0916–03 First Circuit Court, State of Hawai'i[ ] ("*NPH* action"). The *Silla* action sought rescission of a contract to purchase an unimproved residential lot located in the Na Pali Haweo Subdivision in Hawai'i Kai, Honolulu, Hawai'i, and damages. The *NPH* action sought to compel a homeowners association to approve of home building plans which [the Williams] had submitted to it and damages.

4. The contract provided for hourly attorney's fees and repayment of any costs advanced which agreement also provided for a retainer of $3000.00 from which the first hourly fees would be deducted. [CJM] did substantial[ ] investigation, pretrial discovery including depositions on behalf of the clients as well as responding to pretrial discovery done by the opposition, pretrial motions, settlement negotiations, in both matters, an appeal in the *NPH* matter [ (sic) ], and preparation for and conduct of an arbitration hearing presentation in the *Silla* action. [CJM] billed [the Williams] on a monthly basis after the retainer was used up which [the Williams] did timely pay in both actions for about eighteen months up until approximately June 1998 and then began to fall behind. Nevertheless, [CJM] represented [the Williams] in both actions all the way through the Arbitration Hearing until the *Silla* matter was concluded and continued thereafter for a limited time on the *NPH* action which was still scheduled to go to trial.

5. Though [CJM] has repeatedly demanded payment, none have been received since June 8, 1998. As of the date of filing of this Complaint, [the Williams] are in arrears to [CJM] in the amount of $37,275.00 in fees owed in the *Silla* action and $4,020.00 [in] fees owed on the *NPH* action. [The Williams] are therefore in breach of the hourly fee agreement and jointly liable for damages to [CJM] in the amount of $37,275.00 and $4,020.00 for the *Silla* and *NPH* actions respectively for an aggregate sum of $41,295.00.

*COUNT II—QUANTUM MERUIT/UNJUST ENRICHMENT*

. . . .

7. In the alternative, and based upon the above, [the Williams] have been unjustly enriched in the amount of the reasonable value of [CJM's] uncompensated legal services. [CJM] is therefore entitled to an award from [the Williams] in equity, under the doctrine of *quantum meruit,* in the amounts of $37,275.00 and $4,020.00 for the work done in the *Silla* and *NPH* actions respectively for an aggregate sum of $41,295.00.

WHEREFORE, [CJM] respectfully prays for judgment against [the Williams] jointly and severally as follows:

1. With respect to COUNT I, an award of damages in the amount of $41,295.00.

2. With respect to COUNT II, an award in equity in the amount of $41,295.00.

3. Attorney's fees and costs allowable by law along with prejudgment interest at the statutory rate.

4. Such other equitable relief as the Court deems just and meet in the premises.

(Italics and capitalization in the original).

In their October 25, 1999 answer, the Williams denied the material allegations of the complaint, asserted various defenses, and demanded a jury trial.

It appears that in early 2000, the parties submitted their attorneys' fees dispute to the Hawai'i State Bar Association Attorney–Client Committee for mediation. Mediation was apparently unsuccessful, because on July 28, 2000, CJM filed a motion for summary judgment. In its memorandum in support of the motion, CJM revealed further details regarding the underlying litigation:

The *Silla* case sought the rescission of a sales agreement between [the] Williams, as purchasers, and the seller/developer regarding the NPH Lot. The complaint alleged misrepresentation by the developer's sales person as to the quality of the lot's ocean view, allowable improvements, and the ease of obtaining the homeowners association's approval for home construction.

The action, first filed in First Circuit Court, was eventually stayed and ordered to mandatory arbitration pursuant to a contractual provision in the real property sales agreement.

CJM was instructed to and did appeal the trial court's decision to enforce the mandatory arbitration clause. The appeal was unsuccessful. In the *Silla* case, CJM represented [the] Williams up through and including the arbitration hearing to judgment. The Defendants prevailed and the sale [was] upheld by the [arbitrator]. Throughout this time, [the] Williams [were] billed monthly on the agreed upon hourly rate of $175 an hour and the Williams paid these bills until about eight months prior to the arbitration. The Williams then started paying the bills more slowly and immediately following the unsuccessful arbitration stopped paying altogether, resulting in the current amount owing. The attorney's fees outstanding and owed to CJM amount to $37,275.35[2] for services performed in this action.

. . . .

The *NPH* case was a corollary civil action to the *Silla* Case that sought injunctive relief, declaratory relief, and damages against the [NPH] Community Association ("NPHCA") for wrongfully withholding the approval of the Williams' house plans. The NPHCA's position was that the Williams' plans were not approved because the plans violated several recorded building covenants including those governing allowable maximum floor area ([the] Williams' house was allegedly too large) and prohibiting a flat roof design that was incorporated into the Williams' house plans. The Williams claimed that the NPHCA was not consistent nor fair in its enforcement of these building standards because other homeowners had been granted exceptions, and disputed the NPHCA's interpretations of these standards. CJM withdrew as attorneys for the Williams before the *NPH* Case went to trial due to the non-payment of attorney's fees; however, CJM participated in sub-

stantial discovery and preparation of the *NPH* Case while acting as counsel for the Williams under their hourly fee agreement. [The] Williams paid the bills associated with the attorney's time expended in the development of the *NPH* Case, except for a remnant of $4030.23. There is therefore an outstanding bill owed on the *NPH* case to CJM of $4030.23.

. . . .

. . . . CJM, with the approval and encouragement of the Williams, deposed Owen Chock [(Chock)] for several days. [Chock] was an important witness since he was [NPHCA's] architectural expert and chairman of the NPHCA's architectural plan committee. . . . After [Chock] billed the Williams[ ] for his deposition witness fees as a professional (in the amount of $1979.04), [the] Williams reneged on their agreement to pay [Chock]. As a result, [Chock] has been seeking to collect this bill from CJM.

. . . .

Just prior to the arbitration in the *Silla* Case, and after substantial negotiation, a final settlement offer of $50,000 was made by the developer and the NPHCA, without prejudice to [the] Williams' right to submit new house plans to the NPHCA. CJM believed the settlement offer was reasonable and CJM recommended that [the] Williams accept it. Instead, [the] Williams rejected the offer and prior to the commencement of the arbitration hearing, [the] Williams hired Mark Bernstein, Esq. [(Bernstein)] to act as lead counsel in the *Silla* Case because [the] Williams [were] upset that CJM had recommended settlement and because CJM had informed the Williams that based on the discovery undertaken, there would be difficulties in prevailing on some of the [Williams'] claims for rescinding the sales agreement.

Following the retention of Bernstein, the matter proceeded through arbitration and required substantial time and effort. CJM and Bernstein conferred on arbitration

---

**2.** At the August 24, 2000 hearing on Plaintiff–Appellee Chuck Jones and MacLaren's (CJM) motion for summary judgment, CJM acknowl-edged that the correct amount of attorneys' fees outstanding for the *Silla* case was $35,187.62.

strategies and Bernstein was fully paid for his services, through an advance payment of $10,000 by the Williams. Bernstein handled one witness and closing argument.

(Italics in the original; citations to attached exhibits omitted; footnote supplied).

CJM argued that the Williams were liable for its attorneys' fees on the basis of an express written or oral hourly fee agreement or, alternatively, on the basis of an implied agreement for hourly services under the doctrine of *quantum meruit.* CJM further argued that the attorneys' fees and costs demanded were "reasonable, necessary, and consistent with rates and billings observed by other members of the Hawai'i Bar in good standing with similar experience." (Emphatic typesetting omitted.)

In support of the motion, CJM attached the affidavit of Alexander T. MacLaren (MacLaren), the CJM partner who had first contact with the Williams and worked on the underlying litigation, and the affidavit of Ward D. Jones (Jones), the CJM partner who "handled 90% of the work" on the underlying litigation.

In his affidavit, MacLaren identified two documents, attached to the motion as Exhibits A and B, as "true and correct cop[ies]" of two engagement proposal letters (dated October 25, 1996 and October 28, 1996, respectively) he sent to David Williams, husband of Deanna Williams and apparently the liaison between CJM and the Williams. Attached to the latter letter was an unexecuted "Hourly Fee Agreement for Legal Services[.]"

CJM also attached to its motion, as Exhibits C and D, copies of its invoices for legal services performed and costs incurred on behalf of the Williams. With respect to Exhibits C and D, MacLaren deposed that,

> I have reviewed Exhibits C and D attached to this Motion and attest that Exhibits C and D are true and correct copies of bills for the services I rendered on behalf of the [Williams]. The hourly rate charged was the rate agreed upon with the client for the matters I handled on their behalf.

(Enumeration omitted.) Similarly, Jones deposed that,

> [a]ttached hereto as Exhibits C and D, respectively, are true and correct copies of all of the Affiant's billings for legal services he performed in the *Silla* Case and the [*NPH*] Case, arranged chronologically, including all credits for payments made by the Williams. The billings set forth truthfully and accurately what was done, and the time spent on the tasks, and were never, to Affiant's knowledge criticized by [the] Williams; [t]hat according to the billings the current balance owed to CJM in the *Silla* matter is $37,275.35 with the last payment on account being made on June 8, 1998. That the current balance owed to CJM in the [*NPH*] matter is $4030.23 with the last payment on account being made on May 27, 1998. The bulk of the bills still outstanding were generated in 1998 during the months leading up to and including the *Silla* arbitration[.]

(Italics in the original; enumeration omitted.) On the matter of costs, Jones also deposed that, "attached collectively hereto as Exhibit E are true and correct copies of statements from [Chock (in the total amount of $1979.04).]" On the matter of attorneys' fees, CJM attached to its motion the affidavit of David A. Nakashima (Nakashima), opposing counsel in the underlying litigation, who deposed, in relevant part, as follows:

> 5. That Affiant believes [Jones'] attorney's time billed in both of the . . . actions being $63,056 in the *Silla* case and $33,624 in the [*NPH*] case to be fair and reasonable and roughly the same in aggregate amount as Affiant's attorneys' bills submitted to his own clients. Further, that [Jones'] and [MacLaren's] rate of $175/hour is consistent with rates charged by other members of the Hawai'i Bar in good standing and with similar experience in commercial and real estate litigation.

> 6. Affiant believes that both sides pursued the claims and defenses vigorously but at the same time did not waste resources or efforts and attempted to save expenses. For example, counsel stipulated to using certain depositions for both cases, in order to eliminate repeating the same areas of examination.

7. With the facts at hand and available evidence, Affiant believes that [Jones] advocated his clients' position with skill and thorough preparation using all available law and argument.

In their affidavits, MacLaren and Jones also requested, pursuant to Hawai'i Revised Statutes (HRS) § 607–14,[3] attorneys' fees (a total of 52.43 hours X $175.00/hour = $9,175.25) and costs ($1,080.93) deposed to have been incurred in the instant assumpsit action and detailed in "true and correct description[s]" thereof, Exhibits L and M, respectively. Finally, Jones requested prejudgment interest at the rate of 10% per annum, deposed to be in the total amount of $8,774.51 (in the *Silla* case, $7,895.40 for the period June 8, 1998 through July 31, 2000; in the *NPH* case, $879.11 for the period May 27, 1998 through July 31, 2000).

On August 16, 2000, the Williams filed their memorandum in opposition to CJM's motion for summary judgment. The Williams' entire argument in their memorandum in opposition, exclusive of citations to the general law of summary judgments, was as follows:

[CJM] seeks a summary judgment for the alleged reasonable value of legal services provided to [the Williams]. There is no written agreement signed by the parties regarding the alleged services provided.

[The Williams] contend that the billing for the services are excessive and unreasonable and that not all the services were necessary and proper under the circumstances.

[The Williams] also contend that [CJM] failed to complete the required work and another attorney had to be engaged to complete the case.

It is obvious that a genuine dispute exists between the parties as to relevant material facts.

Attached to the memorandum in opposition was the declaration of Deanna Williams:

1. I make this declaration based upon my personal knowledge of the matters stated herein to which I am competent to testify.

2. In 1995, my daughter, SHELLEY A. WILLIAMS, at that time a minor, and myself purchased a lot in the [NPH] subdivision.

3. When we were unsuccessful at having the house plans approved by the [NPHCA], we became involved in arbitration and several lawsuits with the developer and related parties.

4. I was originally represented by Attorney Sid Wong but when he was unable to represent me he referred me to [MacLaren].

5. [MacLaren's] firm represented us in several matters but we obtained no satisfactory results.

6. I paid [MacLaren's] firm approximately $81,000.00 and believe that was full payment for the services provided.

7. Prior to the arbitration in the case handled by [Jones,] it appeared to me that [Jones] was unable to complete the required services and I determined it was necessary to have another attorney, [Bernstein], to complete the necessary services.

8. I paid [Bernstein] $7,500.00 for his services and it appears to me that a significant portion of [CJM's] claim involves the same work that I paid for [Bernstein] to perform.

9. I also had to hire Attorney Dennis King to represent me to handle matters relating to the [NPH case].

---

3. Hawai'i Revised Statutes (HRS) § 607–14 (1993 & Supp.2002) provides, in pertinent part:

In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorney's fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

10. During the course of our representation by [MacLaren and Jones], we received conflicting advice and became confused which shook our confidence in them and a dispute arose which lead to [CJM] withdrawing from further representation.

11. It is our position that [CJM] has been paid in full for the value of the services rendered.

Also attached to the memorandum in opposition was the declaration of Hawai'i attorney Lloyd James Hochberg, Jr. (Hochberg). Hochberg declared, in relevant part:

4. I believe that the legal work consumed in filing an appeal of the order directing arbitration was not a reasonable use of legal resources given the mandatory nature of arbitration in Hawai'i.

In [MacLaren's] original writing to the clients dated October 25, 1996, he reported to the clients that motions to compel arbitration are rarely denied, and there very well may be no legal right to appeal the order. Nonetheless, after the arbitration was compelled, Mr. Ward [ (sic; presumably, Jones) ] undertook to appeal. He generated 75.77 hours on the appeal ($13,259.75).

5. I believe that the time claimed by [CJM] in pursuing mediation in this fee dispute case is not billable to the [Williams] without a basis in contract.

6. There is an issue whether the fees for legal services are reasonable based on the failure of [CJM] to confirm the most important fact (blocked ocean view) in the strongest legal theory in the Silla action. Exhibit G to the Motion for Summary Judgment is a June 1, 1998 letter to Mrs. Deanna Williams from [Jones]. In it [Jones] writes:

I have never told you or David [Williams] that you had a good case. I told you repeatedly that I felt the case was 50–50 without [the developer's salesperson] testifying. When I gave that evaluation, I sincerely believed, based upon the repeated statements and testimony by you and David [Williams], that your ocean view was substantially blocked out by your neighbor. I told you that I needed a video and photos to prove to the arbitrator that your ocean view was blocked out at the second floor level. When I didn't get those items, I went out on May 30th to look at the site again to see if I could estimate what would be visible at the second floor. MUCH TO MY SURPRISE, I FOUND THAT YOUR OCEAN VIEW IS NOT SUBSTANTIALLY BLOCKED BY THE NEXT DOOR NEIGHBORS at least at about 10 feet above grade measuring from the rear of the lot. (Emphasis added)

"I have always advised that I felt the strongest theory for rescission was your claim that [the developer's salesperson] misrepresented to you that you would have an ocean view from the second floor of your home. Having now seen the view from about ten feet above grade, even the view theory is in jeopardy."

Although in October 1996, [Jones] accepted the case, he waited until May 30, 1998, a week or two before the arbitration hearing to confirm the facts about the strongest theory in the case. From June 5, 1998 through June 13, 1998, [Jones] billed 83.5 hours for the arbitration itself ($14,612.50). Had [Jones] confirmed that the case had such little merit, he might have taken the case in a different direction.

7. There is an issue whether the fees charged prior to formal retention by the clients are questionable. There is no written retainer agreement to indicate the date retention occurred. However, it did not occur prior to October 29, 1996 in light of the fact that on October 28, 1996, [MacLaren] wrote to the [Williams] informing them that they had to sign a retainer agreement and pay a retainer fee in order to retain [CJM]. An unsigned retainer letter is attached to the motion. However, if [MacLaren's] firm represented the [Williams] in the October 30, 1996 hearing, then that would be a reasonable date for retention. Prior to the October 30, 1996 date, [CJM] billed 13.8 hours. [CJM] did not write the motion being heard, nor any opposing memoranda. The reasonableness of the 13.8 hours is questionable.

On August 21, 2000, CJM filed its reply memorandum. CJM argued, generally, that "[t]he trial judge is knowledgeable as to what is reasonable as an attorney's fee. *Estate of Thz Fo Farm*, 37 Haw. 447, 453 [ (1947) ]; *Harada v. Ellis*, [60 Haw. 467, 478, 591 P.2d 1060, 1069 (1979) ]." Accordingly,

> even if there are minor issues of reasonableness of billings, which [CJM] does not believe has been adequately demonstrated by the opposition, this court is fully qualified to render a final decision on all aspects of the motion including the amounts awardable. The lower court's determination of reasonable attorney's fees is a matter of discretion which will not be disturbed upon appellate review except for the manifest abuse thereof. *Sharp v. Hui Wahine, Inc.*, [49 Haw. 241, 244, 413 P.2d 242, 245 (1966) ]; *Booker v. Midpac Lumber Co., Ltd.*, 2 Haw.App. 569[, 572–73, 636 P.2d 1359, 1363 (1981) ].

CJM pointed out that Deanna Williams, in her declaration, did not contest

> that an hourly attorney's fee agreement, for an agreed rate of $175/hour, was created between herself and [CJM] and in fact agrees that [CJM] was hired to represent her and did represent her[.]

Similarly,

> Deanna Williams does not dispute the accuracy of the time set forth in the billing statements submitted by [CJM] nor does she dispute that any of the work listed was not performed.

CJM also observed that Chock's witness fees were not disputed by the Williams and should therefore be awarded. Responding to Deanna Williams' allegation of duplication of effort, CJM detailed how Jones and Bernstein conducted her case in the arbitration hearing without redundancy, and referenced the attached affidavit and declaration of Jones and Bernstein, respectively, to that effect.

With respect to the issues raised in Hochberg's declaration, CJM first noted, on the issue of the appeal in the *Silla* case, that the Williams ordered CJM to take the appeal. In his affidavit, Jones confirmed that the Williams instructed him to file the appeal of the order compelling arbitration. With respect to Hochberg's criticism of Jones' alleged failure to timely investigate the purportedly blocked ocean view, CJM first pointed out that Jones wrote his letter to the Williams in an effort to convince them to accept the settlement offer. CJM also argued that Jones was entitled to rely on his clients' repeated and vehement assertions regarding the blocked ocean view. CJM asserted that, because Hochberg did not suggest what other theory of rescission might have proved effective, and because the Williams were particularly aggressive litigants dead set on taking their case to decision in any event, the investigation issue did not raise a genuine issue of material fact as to the reasonableness of its attorneys' fees and costs. Finally, CJM explained that the 13.8 hours its attorneys expended before October 30, 1996 was time spent in familiarizing themselves with a voluminous record and preparing for the hearing that imminently loomed on the motion to compel arbitration.

At the August 24, 2000 hearing on the motion for summary judgment, Jones essentially reiterated the arguments made in CJM's pleadings on the motion. He also reminded the court that,

> under prevailing Hawai'i precedent [the court] has the power to determine the reasonableness of attorney's fees petitions such as this one without the need for experts. And at least we are entirely comfortable with the Court resolving all those issues as it deems fit.

Argument for the Williams, in its entirety, was as follows:

> Just briefly. In addition to what we submitted, Your Honor, this is clearly not a case that should be disposed of at a summary judgment hearing. There are many, many issues quantum meruit.
>
> I also note the billings attached to the motions seem to be from Ward D. Jones AAL, ALC.[4] But the plaintiff in this case is

---

**4.** The attorneys' fees and costs invoices comprising Exhibits C and D to CJM's motion for summary judgment are printed under the CJM name, but state at the end, "PLEASE MAKE CHECK OUT TO WARD D. JONES, AAL, ALC." (Capitalization in the original.)

Chuck Jones & MacLaren Hawai'i Partnership. I'm confused as to which is the proper party, and who should be the proving party, since the bills seem to be from a different entity than the plaintiff in this case.

In addition to what Mr. Hochberg and what Miss [Deanna] Williams' affidavits have represented to Your Honor .... on our submission.

(Footnote supplied.) The court took the motion under advisement without substantive comment. Noting that the "standing" issue had just been raised for the first time, the court allowed supplemental briefing from both sides:

You will have an opportunity to respond solely to that issue. I'm allowing supplemental pleadings only with regard to that narrow issue.

On August 28, 2000, the Williams filed their supplemental memorandum. In addition to further detailing the "standing" argument made at the hearing on the motion for summary judgment, the memorandum reported that CJM's partnership registration had been canceled on November 5, 1998. The memorandum concluded:

It is [the Williams'] position that the named Plaintiff [ (CJM) ] in this action has no standing to bring this action and is not the legal entity entitled to bring an action in quantum merit [ (sic) ].

5. In 1999, HRS chapter 425 (1993), entitled "Partnerships," was extensively amended and re-numbered, 1999 Haw. Sess. L. Act 284; HRS chapter 425 (Supp.2002), effective July 1, 2000. 1999 Haw. Sess. L. Act 284, § 7 at 904. The current counterpart to HRS § 425–130 (1993) is HRS § 425–139(a) (Supp.2002)—in pertinent part, "a partnership continues after dissolution only for the purpose of winding up its business. The partnership is terminated when the winding up of its business is completed." *See also* HRS § 425–137 (1993):

Unless otherwise agreed the partners who have not wrongfully dissolved the partnership or the legal representative of the last surviving partner, not bankrupt, has the right to wind up the partnership affairs; provided that any partner, the partner's legal representative or the partner's assignee, upon cause shown, may obtain winding up by the court.

*See also* HRS § 425–140 (Supp.2002):

The cancellation of the partnership registration in 1998 was in effect a statement of dissolution pursuant to HRS [§ ] 425–9.

CJM filed its supplemental memorandum on August 30, 2000. CJM first asserted that the Williams waived "standing" as a defense by their failure to raise it in their answer to the complaint. CJM argued, alternatively, that

it was not the intent of the Partnership registration law to allow debtors of the partnership to escape their debts just because a partnership fails to re-register itself. *Schoening v. Miner,* 22 Haw. 196[, 197–98] (1914).

CJM informed the court that the cancellation of its partnership registration was due solely to its inadvertent failure to file annual statements for two years, and that CJM's partners were unaware of the cancellation until they voluntarily dissolved their partnership on November 1, 1999. Its dissolution notwithstanding, CJM cited HRS § 425–130 (1993) ("On dissolution the partnership is not terminated, but continues until the winding up of partnership affairs is completed.").[5] CJM also attached the declaration of its whilom bookkeeper, who confirmed that it was CJM's standard practice to invoice its clients on firm letterhead with a direction, placed at the end of the invoice, to make payment to the partner in charge of the account.

(a) After dissolution, a partner who has not wrongfully dissociated may participate in winding up the partnership's business, but on application of any partner, partner's legal representative, or transferee, a court of competent jurisdiction for good cause shown, may order judicial supervision of the winding up.

(b) The legal representative of the last surviving partner may wind up a partnership's business.

(c) A person winding up a partnership's business may preserve the partnership business or property as a going concern for a reasonable time, prosecute and defend actions and proceedings, whether civil, criminal, or administrative, settle and close the partnership's business, dispose of and transfer the partnership's property, discharge the partnership's liabilities, distribute the assets of the partnership pursuant to section 425–144, settle disputes by mediation or arbitration, and perform other necessary acts.

The court entered summary judgment in favor of CJM on September 11, 2000, awarding CJM

1. $35,187.62 for legal services rendered in the *Silla* case, with prejudgment interest on such amount, at a rate of 10% per year simple interest, commencing from June 9, 1998.

2. $4,030.23 for legal services rendered in the [*NPH.*] case, with prejudgment interest on such amount, at a rate of 10% per year simple interest, commencing from May 28, 1998,

3. $1,979.04 for the services of [Chock], and

4. $7,350.00 for attorney's fees and $1,080.93 for costs incurred in the instant action.

(Italics and bold typesetting in the original.) On September 15, 2000, the court filed its final judgment in favor of CJM and against the Williams. After the Williams filed an abortive appeal of the final judgment, the court entered its March 5, 2001 first amended final judgment. The Williams filed a timely notice of this appeal on April 4, 2001.

## II. Standard of Review.

■ We review *de novo* a circuit court's grant or denial of a motion for summary judgment. *Hawaii Community Fed. Credit Union v. Keka*, 94 Hawai'i 213, 221, 11 P.3d 1, 9 (2000). Accordingly,

[o]n appeal, an order of summary judgment is reviewed under the same standard applied by the circuit courts. Summary judgment is proper where the moving party demonstrates that there are no genuine issues of material fact and it is entitled to a judgment as a matter of law. In other words, summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact

and the moving party is entitled to a judgment as a matter of law.

*Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 286, 291, 944 P.2d 83, 88 (App.1997) (citation and internal block quote format omitted). *See also* Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (West 2000).[6]

■ On a motion for summary judgment, a fact is material "if proof of that fact would have the effect of establishing or refuting one of the essential elements of a cause of action or defense asserted by the parties." *Crichfield v. Grand Wailea Co.*, 93 Hawai'i 477, 482–83, 6 P.3d 349, 354–55 (2000) (citations and internal quotation marks and block quote format omitted). "To create a genuine issue as to any material fact a question of fact presented under a conflict in the affidavits as to a particular matter must be of such a nature that it would affect the result." *Richards v. Midkiff*, 48 Haw. 32, 39, 396 P.2d 49, 54 (1964) (citation and internal quotation marks omitted).

In reviewing a circuit court's grant or denial of a motion for summary judgment, "we must view all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion[,]" *Crichfield*, 93 Hawai'i at 483, 6 P.3d at 355 (original brackets, citations and internal quotation marks and block quote format omitted), and "any doubt concerning the propriety of granting the motion should be resolved in favor of the non-moving party." *GECC Fin. Corp. v. Jaffarian*, 79 Hawai'i 516, 521, 904 P.2d 530, 535 (App.1995) (citations omitted), *aff'd and modified*, 80 Hawai'i 118, 905 P.2d 624 (1995).

Similarly,

[c]ourts will treat the documents submitted in support of a motion for summary judgment differently from those in opposition. Although they carefully scrutinize the materials submitted by the moving party to

---

**6.** Hawai'i Rules of Civil Procedure (HRCP) Rule 56(c) (West 2000) provides, in pertinent part: The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any materi-

al fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

ensure compliance with the requirements of Rule 56(e), HRCP (1990), the courts are more indulgent towards the materials submitted by the non-moving party. 10A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 2738 (1983) (Wright and Miller). This is because of the drastic nature of summary judgment proceedings, which should not become a substitute for existing methods of determining factual issues. *Snider v. Snider,* 200 Cal.App.2d 741, 19 Cal.Rptr. 709 (1962).

Affidavits in support of a summary judgment motion are scrutinized to determine whether the facts they aver are admissible at trial and are made on the personal knowledge of the affiant. Also, ultimate or conclusory facts or conclusions of law are not to be utilized in a summary judgment affidavit. Wright and Miller, *supra.*

*Miller v. Manuel,* 9 Haw.App. 56, 66, 828 P.2d 286, 292 (1991).

"Once the movant has satisfied the initial burden of showing that there is no genuine issue of material fact, the opposing party must come forward, through affidavit or other evidence, with specific facts showing that there is a genuine issue of material fact." *Id.* at 65, 828 P.2d at 292 (citation omitted). If the non-moving party fails to meet this burden, the moving party is entitled to summary judgment as a matter of law. *Hawaii Broadcasting Co., Inc. v. Hawaii Radio, Inc.,* 82 Hawai'i 106, 112, 919 P.2d 1018, 1024 (App.1996); *Hall v. State,* 7 Haw.App. 274, 284, 756 P.2d 1048, 1055 (1988). *See also* HRCP Rule 56(e) (West 2000).[7]

7. HRCP Rule 56(e) (West 2000) provides, in relevant part:
 When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

8. As utilized here, "standing to sue" may well be a misnomer:

In deciding a motion for summary judgment, a circuit court must keep in mind an important distinction:

A judge ruling on a motion for summary judgment cannot summarily try the facts; his [or her] role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men [and women] might differ as to its significance, summary judgment is improper. [Citations omitted.]

*Kajiya v. Department of Water Supply,* 2 Haw.App. 221, 224, 629 P.2d 635, 638–39 (1981) (some brackets in the original; internal block quote format omitted) (quoting 10A Wright, Miller and Kane, *Federal Practice and Procedure: Civil* § 2725 (1973)).

In general, "summary judgment must be used with due regard for its purpose and should be cautiously invoked so that no person will be improperly deprived of a trial of disputed factual issues." *Miller,* 9 Haw.App. at 65–66, 828 P.2d at 292 (brackets, citation and internal quotation marks omitted).

### III. Discussion.

At the outset, we briefly dispose of the Williams' contention that CJM lacked what the Williams call, "standing to sue." [8]

Standing is that aspect of justiciability focusing on the party seeking a forum rather than on the issues he or she wants adjudicated. And the crucial inquiry in its determination is whether the plaintiff has alleged such a personal stake in the outcome of the controversy to warrant his or her invocation of the court's jurisdiction and to justify exercise of the court's remedial powers on his or her behalf.

Hawai'i uses a three-part test to determine whether a party has a sufficient personal stake in the outcome of a case. Under this test, the plaintiff or injured party must show that: (1) he or she has suffered an actual or threatened injury as a result of the defendant's wrongful conduct, (2) the injury is fairly traceable to the

Opening Brief at 1. Their point about the form of CJM's invoices is, clearly, merely a matter of clerical form and not one of substance. *See* HRCP Rule 17(a) (West 2000); HRS § 425–137 (1993); HRS § 425–140 (Supp.2002). Their points about the cancellation of CJM's partnership registration, and CJM's dissolution, are similarly devoid of merit. Defects or failings in a partnership's registration may expose its partners to statutory penalties, *see* HRS § 425–13 (1993), but they do not benefit its debtors by affecting the partnership's capacity to sue. *See, e.g., Schoening,* 22 Haw. at 197–98. And, in winding up its business, a dissolved partnership may collect, and continue to collect, debts owed to it. HRS § 425–130 (1993); HRS § 425–139(a) (Supp.2002). *See also* HRS § 425–137 (1993); HRS § 425–140 (Supp. 2002). *Cf. Cane City Builders, Inc. v. City Bank of Honolulu,* 50 Haw. 472, 475–76, 443 P.2d 145, 148–49 (1968) (director of a corporation that was involuntarily dissolved some eight months before could nonetheless file a breach of contract action on behalf of the corporation).

▇ The Williams raise various arguments relating to their liability *vel non* for CJM's attorneys' fees and costs. We briefly dispose of this issue as well. Other than a legally insufficient and ultimately unavailing statement in their August 16, 2000 memorandum in opposition to CJM's motion for summary judgment ("There is no written agreement signed by the parties regarding the alleged services provided."), the Williams did not argue or present evidence below against the court's conclusion that an hourly fee agreement existed between them and CJM. The whole thrust of their opposition to the motion was, that the attorneys' fees and costs demanded by CJM pursuant to their agree-

ment were not reasonable in amount. This being the case, the Williams are subject to the general rule, that

"... an issue which was not raised in the lower court will not be considered on appeal." *Kernan v. Tanaka,* 75 Haw. 1, 35, 856 P.2d 1207, 1224 (1993) (citation and internal quotation marks omitted), *cert. denied,* 510 U.S. 1119, 114 S.Ct. 1070, 127 L.Ed.2d 389 (1994); *Mauna Kea Power Co., Inc. v. Board of Land and Natural Resources,* 76 Hawai'i 259, 262 n. 2, 874 P.2d 1084, 1087 n. 2 (1994); *Birmingham v. Fodor's Travel Publications, Inc.,* 73 Haw. 359, 371, 833 P.2d 70, 77 (1992); *State v. Ildefonso,* 72 Haw. 573, 584, 827 P.2d 648, 655 (1992); *State v. Hoglund,* 71 Haw. 147, 150–51, 785 P.2d 1311, 1313 (1990).

There are sound reasons for the rule. It is unfair to the trial court to reverse on a ground that no one even suggested might be error. It is unfair to the opposing party, who might have met the argument not made below. Finally, it does not comport with the concept of an orderly and efficient method of administration of justice.

*Ellis v. State,* 36 Ark.App. 219, 821 S.W.2d 56, 57 (1991).

*Kawamata Farms, Inc. v. United Agri Products,* 86 Hawai'i 214, 248, 948 P.2d 1055, 1089 (1997). Besides, in complaining in opposition to the motion that the amount of attorneys' fees and costs was unreasonable, Deanna Williams declared that an agreement existed for CJM's provision of legal services in multiple matters. Accordingly, we affirm the court's summary judgment, insofar as it concluded that the Williams were liable to CJM for reasonable attorneys' fees and costs ex-

---

defendant's actions, and (3) a favorable decision would likely provide relief for the plaintiff's injury.

*Pancakes of Hawaii, Inc. v. Pomare Properties Corp.,* 85 Hawai'i 286, 295, 944 P.2d 83, 92 (App.1997) (brackets, ellipsis, citations and internal quotation marks and block quote format omitted). *Cf.* HRCP Rule 17(a) (West 2000):

Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit

of another, or a party authorized by statute may sue in its own name without joining with it the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

pended on their behalf in the underlying litigation.

The Williams argue at length on appeal about *"inadmissable* [ (sic) ] billing statements and letters and the cursory certification of 'facts' buried in the affidavits of [MacLaren] and [Jones]." Opening Brief at 3 (italics in the original; citations to the record omitted). Essentially, the Williams argue that Exhibits C and D to CJM's motion for summary judgment, which were identified in the attached affidavits of MacLaren and Jones as "true and correct" copies of their invoices for the legal services they personally performed in the underlying litigation, were not admissible as evidence of the reasonable value of the services rendered. Here again, the point was not made below and cannot be raised on appeal. *Id.* at 248, 948 P.2d at 1089.

The Williams animadvert very briefly on appeal upon the court's summary judgment award of Chock's witness fees. Again, no objection was made to his fees below and none will be entertained on appeal. *Id.*

We believe, however, as the Williams contend, that one genuine issue of material fact remained—whether the attorneys' fees and costs demanded by CJM for the *Silla* case were reasonable in amount. *Cf. Sharp,* 49 Haw. at 244–45, 413 P.2d at 245–46 (attorneys' fees awarded on a promissory note providing for attorneys' fees must be reasonable, in consonance with the canons of professional ethics [9]).

9. Hawai'i Rules of Professional Conduct Rule 1.5 (West 2000) provides:
 (a) A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
 (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
 (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
 (3) the fee customarily charged in the locality for similar legal services;
 (4) the amount involved and the results obtained;
 (5) the time limitations imposed by the client or by the circumstances;

In this connection, we first address a fundamental misconception evident in CJM's argument below. In its reply memorandum, CJM advised the court that,

> this court is fully qualified to render a final decision on all aspects of the motion including the amounts awardable. The lower court's determination of reasonable attorney's fees is a matter of discretion which will not be disturbed upon appellate review except for the manifest abuse thereof.

This was not fully true advice.[10] CJM's proposition, that a circuit court has the discretion, on a motion for summary judgment in a fee collection action, to determine the reasonable amount of attorneys' fees and costs expended in the underlying litigation, was . predicated upon *Thz Fo Farm,* Sharp, *Harada* and *Booker, supra.* But these were all cases in which the movant sought attorneys' fees and costs incurred in the proceedings then at bar before the circuit court. *Thz Fo Farm,* 37 Haw. at 448; *Sharp,* 49 Haw. at 242, 413 P.2d at 244; *Harada,* 60 Haw. at 476–77, 591 P.2d at 1068; *Booker,* 2 Haw.App. at 569–70, 636 P.2d at 1361. In such cases, apparently, it is the circuit court's familiarity with the litigation and the legal services rendered directly before it that largely justifies reposing in the circuit court the discretion to fix a reasonable amount of attorneys' fees and costs:

> With the services performed in his presence and with which he was consequently familiar, the judge in fixing the allowance could act upon his own knowledge of their character and value.

 (6) the nature and length of the professional relationship with the client;
 (7) the experience, reputation, and ability of the lawyer or lawyers performing the services;
 (8) whether the fee is fixed or contingent, and in contingency fee cases the risk of no recovery and the conscionability of the fee in light of the net recovery to the client;
 (9) the relative sophistication of the lawyer and the client; and
 (10) the informed consent of the client to the fee agreement.

10. CJM's argument *would* apply to the court's award of reasonable attorneys' fees and costs, incurred in connection with the instant fee collection action, pursuant to the assumpsit statute, HRS § 607–14.

*Thz Fo Farm*, 37 Haw. at 449 (footnote omitted). *Cf. id.* at 448:

> While a motion in the form of a prayer might be appropriate in a summary proceeding to recover an attorney's fee [incurred in the case at bar] where all the professional services for which compensation is prayed were directly or indirectly within the knowledge of the judge to whom the motion was addressed, where as here the services rendered included services performed out of the presence of the judge and of which the latter had no personal knowledge direct or indirect, the motion should at least make appropriate reference to the particulars of the latter service and their reasonable value.

 In contradistinction, ours is a fee collection case, in which the reasonable amount of attorneys' fees and costs incurred in the underlying litigation is a material element of the breach of contract cause of action. *See, e.g., TSA Int'l Ltd. v. Shimizu Corp.*, 92 Hawai'i 243, 264, 990 P.2d 713, 734 (1999) (a "breach of contract" claim involves "monetary damages based upon the non-performance of a contractual or quasi-contractual obligation"). *Cf. Ferreira v. Honolulu Star–Bulletin, Ltd.*, 44 Haw. 567, 580, 356 P.2d 651, 658 (1960) (in the absence of proof of substantial damages, a breach of contract action need not be dismissed, but nominal damages may be awarded, upon which costs can be assessed). Accordingly, the court was not, as CJM urged on the motion for summary judgment, "fully qualified" as "a matter of discretion" to freely decide whether the amount of attorneys' fees and costs demanded by CJM for the underlying litigation was reasonable—in other words, to determine damages in its own right in this fee collection action. Rather, it was the duty of the court to decide whether there was a genuine issue of material fact with respect to damages. If such an issue did indeed exist, the Williams were constitutionally entitled to the jury trial they had demanded.[11] We are reminded, that

> [a] judge ruling on a motion for summary judgment cannot summarily try the facts; his [or her] role is limited to applying the law to the facts that have been established by the litigants' papers. Therefore, a party moving for summary judgment is not entitled to a judgment merely because the facts he offers appear more plausible than those tendered in opposition or because it appears that the adversary is unlikely to prevail at trial. This is true even though both parties move for summary judgment. Therefore, if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men [and women] might differ as to its significance, summary judgment is improper. [Citations omitted.]

*Kajiya*, 2 Haw.App. at 224, 629 P.2d at 638–39 (some brackets in the original; citation and internal block quote format omitted).

 In their memorandum in opposition to the motion for summary judgment, the Williams complained that "the billing for the services are [ (sic) ] excessive and unreason-

---

11. The Williams demanded a jury trial and did not subsequently waive that right.

> The right to a jury trial in civil cases is ingrained in our state constitution. Article I, section thirteen explains that "[i]n suits at common law where the value in controversy shall exceed five thousand dollars, the right of trial by jury shall be preserved...." HAW. CONST. art. I, § 13. Article I, section thirteen has been buttressed by the legislature, which reinforced the provision by statute: "When the right of trial by jury is given by the Constitution or a statute of the United States or this State and the right has not been waived, the case shall be tried with a jury." [HRS] § 635–13 (1993). Completing the trilogy, the Hawai'i Supreme Court acknowledged this right in the [HRCP]: "The right of trial by jury as given by the Constitution or a statute of the State or the United States shall be preserved to the parties inviolate." HRCP Rule 38(a). Given the recognition by two branches of the Hawai'i state government, as well as both the Hawai'i and United States Constitutions, the right to a jury trial in civil cases is clearly among the most sacred, fundamental rights enjoyed by our citizens.
>
> *Pancakes of Hawaii, Inc. v. Pomare Properties Corp.*, 85 Hawai'i 300, 305, 944 P.2d 97, 102 (App.1997) (ellipsis and some brackets in the original; footnote omitted). "We consider the right to a jury trial to be inviolate in the absence of an unequivocal and clear showing of a waiver of such right either by express or implied conduct. This court will indulge every reasonable presumption against the waiver of such right." *Lii v. Sida of Hawaii, Inc.*, 53 Haw. 353, 355–56, 493 P.2d 1032, 1034 (1972) (citation omitted).

able and ... not all the services were necessary and proper under the circumstances." And Deanna Williams declared:

5. [MacLaren's] firm represented us in several matters but we obtained no satisfactory results.

6. I paid [MacLaren's] firm approximately $81,000.00 and believe that was full payment for the services provided.

7. Prior to the arbitration in the case handled by [Jones,] it appeared to me that [Jones] was unable to complete the required services and I determined it was necessary to have another attorney, [Bernstein], to complete the necessary services.

8. I paid [Bernstein] $7,500.00 for his services and it appears to me that a significant portion of [CJM's] claim involves the same work that I paid for [Bernstein] to perform.

9. I also had to hire Attorney Dennis King to represent me to handle matters relating to the [NPH case].

10. During the course of our representation by [MacLaren and Jones], we received conflicting advice and became confused which shook our confidence in them and a dispute arose which lead to [CJM] withdrawing from further representation.

11. It is our position that [CJM] has been paid in full for the value of the services rendered.

These conclusory statements, in and of themselves and devoid of specific supporting facts, were not sufficient to raise the genuine issue of material fact of reasonableness. *Miller,* 9 Haw.App. at 65, 828 P.2d at 292 ("the opposing party must come forward, through affidavit or other evidence, with *specific* facts showing that there is a genuine issue of material fact" (emphasis supplied; citation omitted)); HRCP Rule 56(e) (West 2000) ("an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth *specific facts* showing that there is a genuine issue for trial" (emphasis supplied)). Because these statements were the only averments in opposition to the motion that colorably addressed the *NPH* case, we affirm the summary judg-

ment award of attorneys' fees and costs incurred in that case.

■ However, with respect to the *Silla* case, the requisite "specific facts" can be found in Hochberg's declaration. Specifically, Hochberg's opinion—that Jones dilatorily investigated the Williams' claim of a blocked ocean view from their undeveloped residential lot—was sufficient to raise a genuine issue of material fact as to the reasonableness of the attorneys's fees and costs CJM expended in the *Silla* case. As CJM's own declarant, Bernstein, confirmed in conjunction with CJM's reply memorandum,

> having actively participated in the case and seen the relevant percipient witnesses and parties testify and having read the key documents, I believe *the claims and theories with the most merit* which might have justified rescission of the client's sales agreement, *which were misrepresentations related to the view of the ocean,* the type of home which could be built and the ease of obtaining building permits from the owner's association, *were vigorously pursued on behalf of our clients.*

(Emphases supplied.) If CJM "vigorously pursued" this claim for some eighteen months, only to find it shaky upon independent investigation first done literally on the eve of arbitration, the attorneys' fees and costs relating to this primary issue were surely deserving of the scrutiny of the trier of fact. *Cf. Thz Fo Farm,* 37 Haw. at 454–55 (attorneys' fees not allowed for bringing a petition that was "an idle gesture" and obtaining a court order that was "abortive, unnecessary, and of no benefit"); *Sharp,* 49 Haw. at 248, 413 P.2d at 247 ("The [attorneys'] fees, in the aggregate, should not exceed the value of the services that are reasonably necessary under the circumstances of the case." (Citations and internal quotation marks omitted.)); *Harada,* 60 Haw. at 479, 591 P.2d at 1069 (attorneys' fees are allowable for legal services "reasonably considered necessary").

Viewing "all of the evidence and the inferences drawn therefrom in the light most favorable to the party opposing the motion[,]" *Crichfield,* 93 Hawai'i at 483, 6 P.3d

at 355 (original brackets, citations and internal quotation marks and block quote format omitted), and keeping in mind that the opposition's "[c]ounter-affidavits and declarations need not prove the opposition's case; they suffice if they disclose the existence of a triable issue[,]" *Ocwen Fed. Bank, FSB v. Russell,* 99 Hawai'i 173, 183, 53 P.3d 312, 322 (App.2002), we believe the investigation issue, at least, was just such an issue. Although CJM's reply memorandum and the attached declaration by Jones palliated Hochberg's point, they did not conclusively refute it such that it could be resolved as a matter of law, and the point remained "a question of fact presented under a conflict in the affidavits as to a particular matter [which was] of such a nature that it would affect the result." *Richards,* 48 Haw. at 39, 396 P.2d at 54 (citation omitted). As such, Hochberg's opinion raised a genuine issue of material fact as to the reasonableness of the attorneys' fees and costs CJM demanded for the *Silla* case, *id.,* and the Williams were entitled to their jury trial on that issue. *See also Kajiya,* 2 Haw.App. at 224, 629 P.2d at 639 ("if the evidence presented on the motion is subject to conflicting interpretations, or reasonable men [and women] might differ as to its significance, summary judgment is improper") (citation and internal block quote format omitted); *GECC Fin. Corp.,* 79 Hawai'i at 521, 904 P.2d at 535 ("any doubt concerning the propriety of granting the motion [for summary judgment] should be resolved in favor of the non-moving party" (citations omitted)).

## IV. Conclusion.

Accordingly, we affirm the court's March 5, 2001 first amended final judgment, insofar as it found the Williams liable to CJM for reasonable attorneys' fees and costs expended on their behalf in the underlying litigation and awarded the same for the *NPH* case with prejudgment interest. We also affirm the judgment's award for Chock's witness fees. However, we vacate the amounts awarded for attorneys' fees and costs incurred in the *Silla* case and for prejudgment interest thereon, and remand for proceedings not inconsistent with this opinion. En suite, the amounts awarded for attorneys' fees and costs pursuant to HRS § 607–14 are also vacated and similarly remanded. Hawai'i Rules of Professional Conduct Rule 1.5(a)(4) (West 2000) ("factors to be considered in determining the reasonableness of a [lawyers's] fee include .... the amount involved and the results obtained").