LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---oOo---

DAVID W. HALL, Attorney at Law,
A Law Corporation, Plaintiff-Appellant
v.
JAMES H. LAROYA, Defendant-Appellee

NO. 28754

APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CIVIL NO. 1RC06-1-1101)

SEPTEMBER 2, 2010

NAKAMURA, C.J., REIFURTH and GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Plaintiff-Appellant David W. Hall, Attorney at Law, a
Law Corporation (Hall law firm) initiated this action (collection
action) to collect $8,601.92 in attorney fees, costs, and taxes
for legal services provided to Defendant James H. Laroya (Laroya)
in a prior case. After Laroya defaulted in this collection
action, the District Court of the First Circuit, Honolulu
Division (district court), entered judgment on August 22, 2007,
awarding the Hall law firm the principal amount of $8,601.92,
plus interest, filing fees, and other costs. The district court
did not, however, award the attorney fees requested by the Hall
law firm pursuant to Hawaii Revised Statutes (HRS) § 607-14
(Supp. 2006) for the litigation of the instant collection action.
The Hall law firm now appeals, contending that it is entitled to
an award of attorney fees pursuant to HRS § 607-14 for litigating
this case.

This case presents the question of whether a law firm that prevails in a court action to collect fees from a client may also be awarded attorney fees under HRS § 607-14 for the work of an attorney employed with the law firm who represents the firm in the collection action. Given the language and history of the statute and Hawai'i case law, we answer this question in the affirmative.

## I. STATEMENT OF FACTS

The named plaintiff in this action is the Hall law firm, a law corporation. Based on the declaration of David W. Hall (attorney Hall), as an employee of the Hall law firm, he represented Laroya in a criminal matter beginning on September 1, 2003 and, although Laroya agreed to pay for the legal services, Laroya later failed to make any payments.

On February 24, 2006, the Hall law firm filed a complaint in district court against Laroya, seeking $8,601.92 in attorney fees, costs, and gross excise tax for services rendered to Laroya from September 1, 2003 through April 7, 2005.

On February 23, 2007, the district court denied a proposed default judgment submitted by the Hall law firm which had requested a total of $14,611.55, including a request for $2,632.50 for attorney fees in litigating the instant case.[1] The district court denied the requested judgment because the complaint was not verified, and the court also added the following notation: "cannot recover Attorney's Fees as you are essentially representing yourself."

On March 1, 2007, the Hall law firm submitted an Ex Parte Motion for Reconsideration of Denial of Judgment and Attorney's Fees (Motion for Reconsideration). In support of the Motion for Reconsideration, attorney Hall submitted a declaration that stated, in pertinent part:

---

[1] The Honorable Faye M. Koyanagi ruled on this request.

1. I am the attorney for the Plaintiff in the above-entitled matter.

2. The attached motion to reconsider is filed ex parte because Defendant was served by publication and cannot be found.

3. As an employee of Plaintiff, I represented the Defendant in State of Hawaii vs. James Laroya, Criminal Case No. 1P103-09420, Citation/Report No. 03349488, in which he was charged with impersonating a police officer in the second degree, extortion in the third degree and sexual assault in the fourth degree. I spent 77.9 hours from September 1, 2003 through May 10, 2004 in resolving the case with a deferred acceptance of a no contest plea to impersonating a police officer in the second degree which was ultimately dismissed after another year. I performed all work in the case under Plaintiff's name and bills were submitted to Defendant in Plaintiff's name.

4. Although Defendant had consistently said that he would pay for the services rendered, he did not pay anything.

. . . .

6. I filed a verified complaint in this action to recover the money owed Plaintiff on February 24, 2006.

7. After many failed attempts to locate Defendant, he was served by publication.

8. Defendant failed to appear on February 20, 2007. I appeared on behalf of Plaintiff and requested that a default be entered and that Plaintiff be permitted to submit a Judgment and request for attorney's fees and costs and the Court so ordered.

9. On February 22, 2006, I submitted a Judgment and Declaration Regarding Attorneys' Fees and Costs on behalf of Plaintiff with detailed time sheets as Exhibit 1 and costs as Exhibit 2. . . .

10. On February 26, 2007, I received the Judgment and the Declaration Regarding Attorneys' Fees and Costs and Exhibits 1 and 2 back stamped "Denied" with the explanation that "per court minutes on 2-20-07, complaint not verified" and "cannot recover attorney's fees as you are essentially representing yourself."

. . . .

. . . .

13. I have practiced as an shareholder, director, officer and employee of Plaintiff and its predecessor corporations since 1980 and prior to 1980, I had practiced under various other corporate entities and partnerships since 1971.

. . . .

On March 8, 2007, the district court denied the Motion for Reconsideration.[2]

On July 26, 2007, default judgment was entered and on August 22, 2007, judgment was entered, awarding a total of $12,438.73,[3] but not awarding attorney fees for the work in this collection action.

## II. DISCUSSION

### A. Standards of Review

On appeal, a trial court's grant or denial of attorneys' fees is reviewed under the abuse of discretion standard. Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008); TSA Int'l, Ltd. v. Shimizu Corp., 92 Hawai'i 243, 253, 990 P.2d 713, 723 (1999).

> The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. Stated differently, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

TSA Int'l, Ltd., 92 Hawai'i at 253, 990 P.2d at 723 (citations, internal quotation marks, and brackets omitted).

In this case, the statutory interpretation of HRS § 607-14 is central to the issue on appeal. For purposes of interpreting a statute,

> our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists....
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. HRS § 1-15(1) (1993). Moreover, the courts may resort to extrinsic

---

[2] The Honorable Hilary Gangnes ruled on the Motion for Reconsideration.

[3] The total judgment amount was comprised of: $8,601.92 for the principal amount; $2,821.84 for interest; $120 for costs of court; and $894.97 for other costs.

> aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.

Fought & Co. v. Steel Eng'g and Erection, Inc., 87 Hawai'i 37, 45, 951 P.2d 487, 495 (1998) (citations, internal quotation marks, and brackets omitted).

### B. Attorneys' Fees Under HRS § 607-14

The Hawai'i Supreme Court has often stated with regard to the award of attorneys' fees that:

> Generally, under the "American Rule," each party is responsible for paying for his or her own litigation expenses. A notable exception to the "American Rule," however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement.

TSA Int'l, Ltd., 92 Hawai'i at 263, 990 P.2d at 733 (citations omitted); see also DFS Group L.P. v. Paiea Properties, 110 Hawai'i 217, 219, 131 P.3d 500, 502 (2006); Ranger Ins. Co. v. Hinshaw, 103 Hawai'i 26, 31, 79 P.3d 119, 124 (2003).

HRS § 607-14 is a statutory exception to the American Rule. It provides, in pertinent part:

> § 607-14 Attorneys' fees in actions in the nature of assumpsit, etc. In all the courts, in all actions in the nature of assumpsit . . . there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the court determines to be reasonable, to be paid by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.
>
> . . . .
>
> The above fees provided for by this section shall be assessed on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment.

Here, where Laroya promised to pay for legal services, this action to collect the fees he owes is "in the nature of assumpsit." See Chuck Jones & MacLaren v. Williams, 101 Hawai'i 486, 502, 71 P.3d 437, 453 (App. 2003) (implicitly recognizing

that HRS § 607-14 applied to a fee collection action for legal services); Kamaka, 117 Hawaiʻi at 121-22, 176 P.3d at 120-21 ("Assumpsit is a common law form of action which allows for the recovery of damages for non-performance of a contract, either express or implied, written or verbal, as well as quasi contractual obligations.") (quoting Blair v. Ing, 96 Hawaiʻi 327, 332, 31 P.3d 184, 189 (2001)) (internal quotation marks and brackets omitted).

The express terms of HRS § 607-14 are broad, stating that "[i]n all the courts, in all actions in the nature of assumpsit[,]" reasonable attorneys' fees "shall be taxed[.]" HRS § 607-14 (emphasis added). The breadth of this language suggests that attorneys' fees should be recoverable in cases such as this.[4] Hawaiʻi case law supports this conclusion.

In Middleditch v. Kawananakoa, 16 Haw. 803 (Haw. Terr. 1905), the Supreme Court of the Territory of Hawaiʻi held that an

---

[4] The paragraph in the statute explaining that attorneys' fees should be assessed "on the amount of the judgment exclusive of costs and all attorneys' fees obtained by the plaintiff, and upon the amount sued for if the defendant obtains judgment" does not preclude the award of attorneys' fees under the statute in a collection action such as this, where the underlying debt itself is for attorneys' fees. Rather, the "exclusive of costs and all attorneys' fees" language was added in 1935 to clarify that the calculation of attorneys' fees under the statute, when the plaintiff prevails, should be based on the underlying amount awarded before adding costs and attorneys' fees. The Senate Committee Report regarding the amendment states, in relevant part:

> This statute provides, in part, that such fees shall be assessed on the amount of the judgment obtained by the plaintiff. As a judgment rendered in favor of the plaintiff includes costs and attorney's fees taxable under the particular section of the Revised Laws proposed to be amended as well as other sections thereof, such costs and attorney's fees should be excluded from the judgment when the attorney's fees first referred to above are determined.

S. Stand. Comm. Rep. No. 122, in 1935 Senate Journal, at 631.

attorney "acting on his own behalf as plaintiff" was entitled to recover attorney fees under the predecessor statute to HRS § 607-14. The court stated in full:

> Attorney's fees in actions of assumpsit when the plaintiff, being an attorney at law, conducts his own case. <u>The statute allowing attorney's fees in actions of assumpsit applies in cases in which an attorney at law is a party and conducts his own case</u>. The plaintiff recovered judgment in an action of assumpsit in the sum of $616.25 with interest and costs of court. The plaintiff, being an attorney at law, appeared in person. The plaintiff's exceptions present the question whether the plaintiff appearing in person and acting on his own behalf as plaintiff in this action is entitled to attorney's fees as provided by sections 1889 and 1892 of the Revised Laws upon the judgment rendered in his favor, the trial court having granted the defendant's motion to vacate the order taxing plaintiff's costs of $59.35.
>
> <u>The fact that the attorney in this case is the plaintiff does not deprive him of the statutory right to attorney's fees</u>. The exception is sustained and the order excepted to is set aside.

<u>Id.</u> (emphasis added). Although in the instant case the named plaintiff is the Hall law firm -- not attorney Hall individually -- this case is similar to <u>Middleditch</u>. We can discern no relevant distinction from <u>Middleditch</u> in this circumstance.

In <u>Lau v. Lopez</u>, 112 Hawai'i 231, 145 P.3d 774 (App. 2006), this court presumed that <u>Middleditch</u> was binding precedent[5] but distinguished it because there the same individual (Lau) was acting in his capacity as both the plaintiff Trustee for another person's living trust as well as the attorney for the Trustee. Under such facts, this court held that the problem of

---

[5] In <u>Lau</u>, the Intermediate Court of Appeals (ICA) noted that <u>Middleditch</u> was printed in a section of volume 16 of the Hawai'i Reports titled "Decisions Announced without Opinions During the Period Covered by this Volume," but that subsequently the Hawai'i Supreme Court had cited decisions in this part of volume 16. Thus, notwithstanding Rule 35 of the Hawai'i Rules of Appellate Procedure (HRAP) (2006), the ICA in <u>Lau</u> assumed that <u>Middleditch</u> was binding precedent for purposes of that case. We follow <u>Lau</u> in recognizing <u>Middleditch</u> as binding precedent. In addition to the analysis in <u>Lau</u>, because <u>Middleditch</u> was a published decision in the Hawai'i Reports, we do not believe that its citation is prohibited by HRAP Rule 35 (2010), as amended and effective July 1, 2008.

double recovery of trustee fees and attorney fees, as well as potential conflicts of interest, precluded recovery of attorney fees under HRS § 607-14. No similar problems exist in the instant case.[6]

Additionally, Kamaka provides indirect but instructive guidance. There, a terminated attorney brought action against a law firm claiming, *inter alia*, breach of implied contract, and the Hawai'i Supreme Court considered whether the prevailing law firm could collect attorneys' fees under HRS § 607-14. 117 Hawai'i at 121-26, 176 P.3d at 120-25. After reviewing the issue carefully, the Hawai'i Supreme Court affirmed the trial court's award of attorneys' fees in the amount of $364,154.25 to the defendant Goodsill law firm, which was 25% of the judgment requested by the plaintiff at trial. Id. at 126, 176 P.3d at 125. In addressing the issue of whether the Goodsill firm had adequately documented its attorneys' fees, the court noted that the Goodsill firm had provided evidence of the billing by its outside counsel, the Miller law firm, and also evidence of the fees for attorneys within the Goodsill law firm who had worked on the case. Id. at 122-23, 176 P.3d at 121-22. Billing statements from the Miller law firm amounted to $406,059.38, and a sworn statement also established that "Goodsill's [own] attorneys' fees amounted to more than double the amount of $365,154.25 [sic]."

---

[6] We note that a different issue could arise where an attorney serving as the trial advocate is also a necessary witness. In such a circumstance, Rule 3.7 of the Hawai'i Rules of Professional Conduct may preclude the attorney from serving as the advocate at trial. However, Rule 3.7 dictates the proper conduct at a trial and does not affect the requirements under HRS § 607-14. Here, because defendant Laroya defaulted and did not contest any of the issues, there was no trial and Rule 3.7 did not come into play.

Id. (first bracket in original). The court thus concluded "we cannot say that [the trial court's] award of fees was made without adequate documentation." Id. at 123, 176 P.3d at 122.

Nowhere in the opinion does the Hawaiʻi Supreme Court indicate that attorneys' fees are precluded under HRS § 607-14 for the work done by the Goodsill attorneys and instead the documentation of that work is relied upon by the court.[7] See also Chuck Jones & MacLaren, 101 Hawaiʻi at 502, 71 P.3d at 453 (ICA presumed as valid the trial court's award of attorneys' fees pursuant to HRS § 607-14 where attorneys brought collection action for prior legal services; however, fee award was vacated and remanded on other grounds).

C. **1993 Amendments to HRS § 607-14**

In 1993, HRS § 607-14 was amended to add an underlying or provisional requirement for the award of attorneys' fees in assumpsit cases. Under this amendment, *inter alia*, the statute now requires that the attorney representing the prevailing party submit an affidavit, as follows:

> . . . provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. . . .

---

[7] We do note that the Hawaiʻi Supreme Court in Kamaka did not need to reach or address the precise issue of awarding fees for work by the Goodsill attorneys. That is, the attorneys' fees billed by the Miller law firm were already more than the amount recoverable (i.e., 25% of the "amount sued for" by plaintiff Kamaka) and ultimately awarded, and thus it is arguable that the fees awarded in Kamaka were just for the work by the Miller law firm. Nevertheless, Kamaka is instructive in that the fees by Goodsill attorneys were considered by the court in the overall question of reasonably documenting the fees awarded in that case.

HRS § 607-14. We point out this amendment because one might argue that it reflects an intent to only award attorneys' fees where fees are charged and must be paid by the prevailing party. We conclude, however, that the requirement of the attorney affidavit was not intended to so limit the award of attorneys' fees under HRS § 607-14.

First, the language of the statute does not expressly state such a limitation. Second, to the extent any ambiguity exists, the history of the statute is helpful in determining the legislative intent. In its original version, first adopted in 1872, and for over a hundred years thereafter, the statute did not have the requirement of an attorney affidavit. Rather, the statute simply set out a schedule or formula for the attorneys' fees to be taxed, similar to a commission,[8] regardless of whether the prevailing party was obligated to pay attorneys' fees. The original version of the statute read:

> In all the courts of this Kingdom, in all actions of assumpsit there shall be taxed as attorney's fees, in addition to the attorney's fees now taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, ten per cent. on all sums to one hundred dollars, and two and one-half per cent. in addition on all sums over one hundred dollars, to be computed on the excess over one hundred dollars. The above fee shall be assessed on the amount of the judgment obtained by the plaintiff and upon the amount sued for, if the defendant obtain judgment.

1872 Haw. Sess. Laws, Act 29, § 5.

---

[8] In <u>Nott v. Silva</u>, 16 Haw. 635, 637 (Haw. Terr. 1905), the Supreme Court of the Territory of Hawai'i considered the version of the statute then in place, Revised Laws section 1892, and expressed the view that "these fees are <u>in the nature of commissions</u> estimated by percentages of the amount for which judgment is obtained or the amount sued for . . . ." (emphasis added).

A schedule or formula for taxing attorneys' fees, although updated over time, continued to guide the award of attorneys' fees until 1993.[9]  In 1993, the Legislature amended the statute by, *inter alia*, (1) deleting the schedule of attorneys' fees, (2) adding the current language requiring an affidavit from the attorney representing the prevailing party, and (3) limiting recovery to twenty-five percent of the judgment or amount sued for, depending on which party obtains fees.  The legislative history for the amendments in 1993 does not reveal an intent to limit or bar the recovery of fees previously allowed, but rather to more fairly compensate parties who prevail in assumpsit cases by changing the "manner" in which those fees are determined.  The Conference Committee Report for the 1993 amendments states, in pertinent part:

> The purpose of the bill is to change the manner in which attorneys' fees are determined in assumpsit actions.
>
> Your Committee finds that attorneys' fees in assumpsit actions are often based on a percentage as opposed to an hourly rate, and that the current law does not fairly compensate the creditor for the expense of retaining an attorney to prosecute its claim, nor does it fairly compensate the defendant who prevails against a creditor's faulty claim.

Conf. Comm. Rep. No. 127, in 1993 Senate Journal, at 796 (emphasis added); see also S. Stand. Comm. Rep. No. 1122, in 1993 Senate Journal, at 1182; H. Stand. Comm. Rep. No. 194, in 1993 House Journal, at 1043.  Although part of the committee's report references the "retaining" of attorneys, the overall intent and purpose of these amendments appear to be to increase the

---

[9]  Prior to its amendment in 1993, HRS § 607-14 (1985) provided recovery of:

> . . . a fee which the court determines to be reasonable but which shall not exceed the amount obtainable under the following schedule:
>
> 25 per cent on first $1,000 or fraction thereof.
> 20 per cent on second $1,000 or fraction thereof.
> 15 per cent on third $1,000 or fraction thereof.
> 10 per cent on fourth $1,000 or fraction thereof.
> 5 per cent on fifth $1,000 or fraction thereof.
> 2.5 per cent on any amount in excess of $5,000.

availability of attorneys' fees in assumpsit actions, rather than to limit them.

Finally, there is no indication the Legislature was contemplating, by way of the 1993 amendments or any other amendments to the statute, the issue we address in this case or any concern about the long-standing Middleditch decision.

We therefore conclude that, even to the extent there is any ambiguity in HRS § 607-14, its legislative history does not reveal any intent to undo the application of Middleditch or to preclude the award of attorneys' fees in circumstances such as this case. This interpretation of the statute is also consistent with Kamaka, which was decided after the adoption of the 1993 amendments to HRS § 607-14.

D. **Other Jurisdictions**

Cases from other jurisdictions are split on whether attorneys representing themselves or their firms can recover for their respective attorney fees under fee-shifting statutes. Some cases have found that recovery of attorneys' fees is precluded in such circumstances, based mostly on the intent and purpose of the statute in issue.

In Kay v. Ehrler, 499 U.S. 432 (1991), the United States Supreme Court upheld the denial of attorney fees to a *pro se* attorney litigant where the fee-shifting statute was a civil rights statute, 42 U.S.C. § 1988. The court framed the question before it as "whether a lawyer who represents himself should be treated like other *pro se* litigants or like a client who has had the benefit of the advice and advocacy of an independent attorney." Id. at 435. In construing the federal statute, the U.S. Supreme Court noted that neither the text nor history of 42 U.S.C. § 1988 provided a clear answer. Id. The court ultimately determined that the "overriding statutory concern" of 42 U.S.C. § 1988 was that "independent counsel for victims of civil rights violations" be obtained and that "Congress was interested in ensuring the effective prosecution of meritorious claims." Id. at 437. Therefore, the court determined that the better rule would be to not allow attorneys' fees to *pro se* attorney

litigants so that there would be "an incentive to retain counsel in every such case." Id. at 438.

In Trope v. Katz, 902 P.2d 259 (Cal. 1995), a law firm sued a former client for legal fees of $163,000 for services provided in a prior case. A representation agreement between the law firm and the client provided that, "[i]n the event it becomes necessary to file an action to recover the fees and costs set forth in this agreement, the Court may award reasonable attorneys' fees for the recovery of said fees and costs." Id. at 262. The law firm prevailed on its complaint and then sought attorneys' fees under the retainer contract. Id.

The California Supreme Court first determined that section 1717 of the California Civil Code (Cal. Civ. Code §1717) applied. Id. at 263. Section 1717, subdivision (a), stated in pertinent part:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Id. The court thus analyzed the issue as a matter of statutory interpretation, stating that "[o]ur resolution of this issue turns on how we construe section 1717, and particularly on how we define the words 'reasonable attorney's fees' in subdivision (a) of that statute." Id.

The court focused on the terms in section 1717, particularly "incurred" and "fee," ultimately concluding: "[a]ccordingly, the usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation." Id. at 264; see also Calhoun v. Calhoun, 529 S.E.2d 14, 17 (S.C. 2000) (under a statute that allows recovery of reasonable attorneys' fees "incurred", the court held that *pro se* attorney litigants could

not recover because they "[do] not become liable for or subject
to fees charged by an attorney.")

Other cases have reached the opposite conclusion.  In
Bond v. Blum, 317 F.3d 385 (4th Cir. 2003), the Fourth Circuit
Court distinguished Kay and held that its principles:

> do not apply in circumstances where entities represent
> themselves through in-house or *pro bono* counsel.  In *Kay*,
> the Supreme Court explained the distinction: "[A]n
> organization is not comparable to a *pro se* litigant because
> the organization is always represented by counsel, whether
> in-house or *pro bono*, and thus, there is always an
> attorney-client relationship."  499 U.S. at 436 n. 7, 111
> S.Ct. 1435.  When a member of an entity who is also an
> attorney represents the entity, he is in an attorney-client
> relationship with the entity and, even though interested in
> the affairs of the entity, he would not be so emotionally
> involved in the issues of the case so as to distort the
> rationality and competence that comes from independent
> representation.

Bond, 317 F.3d at 399-400.  See also Robbins v. Krock, 896 N.E.2d
633, 635-36 (Mass. App. Ct. 2008) ("[O]ther jurisdictions are in
conflict as to whether a lawyer representing herself in a pro se
capacity has the right to recover attorney fees.  We believe the
better rule to be one that allows an attorney who represents
herself to recover the same costs she would be entitled to if she
had been represented by another."); Hinkle, Cox, Eaton, Coffield
& Hensley v. Cadle Co. of Ohio, Inc., 848 P.2d 1079, 1085 (N.M.
1993) (where an associate of the defendant law firm provided
legal services to the firm, the New Mexico Supreme Court stated
that "[i]t would be unjust to deny fees to an attorney or law
firm for self-representation when the attorney or firm, in
rendering services for itself, has potentially incurred as much
pecuniary loss as if it had employed outside counsel" and "it
should be of no significance to the party bound to pay attorney's
fees whether the award of fees is to an attorney or firm
representing itself or is to retained counsel.")

We survey these cases because they provide some
perspective on how the issue has been addressed by other courts.
We note, for instance, that HRS § 607-14 is not a civil rights
statute as in Kay where there was an overriding concern in having
independent counsel.  Moreover, unlike the statutes in Trope and

14

Calhoun, HRS § 607-14 does not include language that the attorneys' fees be "incurred," which those courts construed as meaning an amount the litigant must actually pay or be liable to pay.

Ultimately, the issue for this court must turn on existing Hawaiʻi case law and the specific language and intent of HRS § 607-14. As noted above, Hawaiʻi case law, the broad language of HRS § 607-14, and -- to the extent the statute is ambiguous -- the legislative history of HRS § 607-14, support a determination that the award of attorneys' fees is allowed where an attorney represents his or her firm in an assumpsit action.

To the extent there is a concern that recovery of attorneys' fees in these types of situations will be subject to abuse, we note that HRS § 607-14 limits recovery to "a fee that the court determines to be reasonable" and that is subject to the twenty-five percent cap provided under the statute.

## III. CONCLUSION

In light of the foregoing, the district court based its decision on an erroneous reading of HRS § 607-14 and therefore erred in denying the attorney fees requested by the Hall law firm for litigating this collection action. We remand for further proceedings consistent with this opinion.

On the briefs:

David W. Hall
for Plaintiff-Appellant

*Craig H. Nakamura*

*Lawrence M Reifurth*

*Lisa M Ainja*

15